UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
CAROLINA SHIPPING LTD.                          :

       Plaintiff,                                :          08 CV 4711 (BSJ)
                                  ECF CASE

      - against -                             :

RENAISSANCE INSURANCE GROUP LTD.,      :

       Defendant.                             :
-------------------------------------------------------X

## DECLARATION OF LAUREN C. DAVIES
## IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
## MOTION TO VACATE MARITIME ATTACHMENT

       LAUREN C. DAVIES declares under penalty of perjury of the laws of the United States of America as follows:

       1.      I am an attorney with the firm, Tisdale Law Offices, LLC, counsel for the Plaintiff herein, Carolina Shipping Ltd. ("Carolina" or "Plaintiff") and I make this declaration based upon my personal knowledge and upon information and documents furnished to me by Plaintiff that I believe to be true and accurate.

       2.      I submit this Declaration in Support of Plaintiff's Opposition to Defendant Renaissance Insurance Group Ltd.'s (hereinafter "Renaissance" or "Defendant") Motion to Vacate this maritime attachment.

       3.      At all material times, Plaintiff was and still is an entity duly organized and existing by virtue of foreign law with a principal place of business in Malta.

       4.      Upon information and belief, at all material times, Defendant Renaissance was and still is an entity duly organized and existing by virtue of foreign law with a principal place of business in Moscow.

5.     By a Hull and Machinery Contract (hereinafter the "H&M Contract") dated March 24, 2006, Defendant agreed to insure the M/V A.P. SKY (hereinafter the "Vessel") for a period of insurance beginning on March 25, 2006 and ending on March 24, 2007 in consideration for payment by the Plaintiff of a Gross Premium in the sum of $25,000.

6.     During a voyage from Ravenna to Istanbul between the dates of July 8 and July 26, 2006, the Vessel experienced a breakdown of the main engine.

7.     Plaintiff made a timely submission of its claim for reimbursement of the damage to the Vessel's engine under the H&M Contract.

8.     Despite due demand and in breach of the H&M Contract, Renaissance wrongfully refused to pay the claim.

9.     Specifically, Renaissance has failed to pay Plaintiff's claims for the cost of repair to the main engine plus survey fees and other costs incurred during the repair.

10.    As a result, the Plaintiff has suffered damages in the principal sum of $805,602.66 for the cost of repairs to the main engine and $200,000.00 for the cost of the survey and other fees incurred as best as can now be estimated, exclusive of interest, recoverable costs and reasonable attorneys' fees.

11.    Despite due demand, the Defendant has failed to pay the sums due and owing to the Plaintiff under the H&M Contract.

12.    Pursuant to the H&M Contract, all disputes arising thereunder are to be submitted to the Marine Arbitration Commission at Moscow.

13.    In accordance with the H&M Contract, the Plaintiff will soon commence arbitration and appoint its arbitrator.

14.     In order to obtain personal jurisdiction over the Defendant and to obtain security for its maritime claims, Plaintiff commenced this action on May 20, 2008, by the filing of a Verified Complaint which included a prayer for an Ex-Parte Order for Process of Maritime Attachment pursuant to Rule B [of the Supplemental Rules for Certain Admiralty and Maritime Claims].

15.     On May 20, 2008, Ms. Dawn Kubie, a paralegal in our office, presented a copy of the filed Verified Complaint, accompanying affidavit of Lauren C. Davies and the Ex-Parte Order for Process of Maritime Attachment and Garnishment ("Ex-Parte Order") to the chambers of the Honorable Barbara S. Jones.

16.     The fact that the affidavit was not notarized was a clerical error. The veracity of any of the contents thereof have not been questioned (and is really the same as an attorney's affirmation).

17.     Nonetheless, a supplemental and properly notarized affidavit is attached hereto as Exhibit "1."

18.     On May 20, 2008, the Court issued the Ex-Parte Order which authorized Plaintiff to attach Defendant's property located within this judicial district and belonging the Defendant up to the sum sought.

19.     The Ex-Parte Order and Process of Maritime Attachment and Garnishment ("PMAG") named garnishee banks believed to have assets due and owing to the Defendants. The Ex-Parte Order and PMAG were served upon the garnishee banks.

20.     On or about May 28, 2008, JP Morgan Chase Bank restrained property belonging to the defendant in the sum of $140.00 pursuant to the Ex-Parte Order and Process of Maritime Attachment and Garnishment in this matter.

21.   On or about May 30, 2008, American Express Bank restrained property belonging to the defendant in the sum of $4,037.50 pursuant to the Ex-Parte Order and Process of Maritime Attachment and Garnishment in this matter.

22.   On or about June 5, 2008, Deutsche Bank restrained property belonging to the defendant in the sum of $233,910.00 pursuant to the Ex-Parte Order and Process of Maritime Attachment and Garnishment in this matter.

23.   In accordance with Local Rule B.2, the Defendant's Counsel has been duly notified of all of these attachments.

24.   On or about June 3, 2008, the undersigned's office spoke with a representative in the State of New York Insurance Department and was told that Renaissance Insurance Group Ltd. has not filed any paperwork whatsoever with the Department, and, as such, is not registered to do insurance business in New York.

25.   Attached hereto as Exhibit "2" is the State of New York Department of State Registration of Renaissance to do business in New York.

26.   Attached hereto as Exhibit "3" is Renaissance's application for registration to do business in New York including the letter dated November 19, 2007 from the State of New York Insurance Department to Mr. Michael E. Unger.

27.   Attached hereto as Exhibit "4" are the instructions from the New York Division of Corporations webpage which indicate the requirements for obtaining authority to do business in the State of New York.

28.   Attached hereto as Exhibit "5" are the forms which must be filled out and filed by the corporation who desires to register with the New York Department of State.

29.    Attached hereto as Exhibit "6" is the form by which a corporation may surrender its authority to do business in New York State.

30.    Attached hereto as Exhibit "7" is NY CLS Ins. § 1106 (2008) which details some of the requirements a foreign or alien insurer must meet to be to be licensed to do business in New York.

31.    Attached hereto as Exhibit "8" is the January 16, 2004 opinion of the Office of General Counsel representing the position of the New York State Insurance Department regarding service of process on an unauthorized alien insurer.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 5, 2008.

Lauren C. Davies

## AFFIRMATION OF SERVICE

I hereby certify that on June 5, 2008, a copy of the foregoing DECLARATION OF

LAUREN C. DAVIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION TO

VACATE MARITIME ATTACHMENT was filed electronically and served by mail on anyone

unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by

operation of the Court's electronic filing system or by mail to anyone unable to accept electronic

filing.  Parties may access this filing through the Court's CM/ECF system.


By:_____/s/_____
         Lauren C. Davies

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CAROLINA SHIPPING LTD.                          :

       Plaintiff,                                    :            08 Civ. 4711 (BSJ)
                                           ECF CASE

    - against -                                         :

RENAISSANCE INSURANCE GROUP LTD.,    :

       Defendant.                                  :
-------------------------------------------------------------X

**AMENDED AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT**

State of Connecticut  )
                   )    ss: SOUTHPORT
County of Fairfield    )

       Lauren C. Davies, being duly sworn, deposes and says:

       1.      I am a member of the Bar of this Court and represent the Plaintiff herein. I am familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

**DEFENDANTS ARE NOT PRESENT IN THE DISTRICT**

       2.      On May 20, 2008, I attempted to locate the Defendant, RENAISSANCE INSURANCE GROUP LTD., within this District. As part of my investigation to locate the Defendant within this District, I checked the telephone company information directory, as well as the white and yellow pages for New York listed on the Internet or World Wide Web, and did not find any listing for the Defendants.

       3.      On May 20, 2008, I also checked the New York State Department of Corporations' online database, which showed a listing for RENAISSANCE INSURANCE

GROUP LTD. as having registered to do business in New York on or about November 27, 2007. *See NY Department of State Division of Corporations Entity Information annexed hereto as Exhibit "1."*

    4.    Despite this registration to do business and the appointment of a DOS Process server, I submit that the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

    5.    According to the Second Circuit, in order for a defendant to be "found within the district," a two pronged test must be met. First, the defendant must be "found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process." *Seawind Compania, S.A. v. Crescent Line, Inc.,* 320 F. 2d 580, 582 (2d Cir. 1963); *quoted in Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GMBH & Co.,* 409 F. Supp. 2d 427, 432 (S.D.N.Y. 2006).

    6.    Here, the defendant can be found for service of process but not in terms of jurisdiction as mere registration to do business alone is not enough to be "found" for the purposes of Rule B. As stated by the Court in *Erne,* "neither policy underlying Rule B is vindicated by predicating jurisdiction on a mere filing for authorization to do business under the Business Corporation Law. Accordingly, we do not consider such filing to be sufficient to make a showing that a defendant is "found" within the district." *See Erne Shipping,* 409 F. Supp. 2d at 438 (overruled on other grounds); *but see Centauri Shipping Ltd. v. Western Bulk Carriers KS,* 528 F. Supp. 2d 187 (S.D.N.Y. 2007).

    7.    Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within the District in the hands of ABN Amro,

American Express Bank, Bank of America, Bank of New York, Citibank, Deutsche Bank, HSBC

(USA) Bank, J.P. Morgan Chase, Standard Chartered Bank and/or Wachovia Bank N.A.

**<u>PRAYER FOR ORDER ALLOWING SPECIAL PROCESS SERVER</u>**

8.    Plaintiff seeks an order pursuant to Rule 4(c) of the Federal Rules of Civil

Procedure, for an Order appointing Thomas L. Tisdale, Claurisse A. Campanale-Orozco, Lauren

C. Davies or any other partner, associate, paralegal or other agent of TISDALE LAW OFFICES,

LLC to serve the Verified Complaint, Process of Maritime Attachment and Garnishment,

Interrogatories or other process in this action, in addition to the U.S. Marshall to serve the

Process of Maritime Attachment and Garnishment and the Verified Complaint, together with any

Interrogatories, upon the garnishee(s), together with any other garnishee(s) who, based upon

information developed subsequent hereto by the Plaintiff, may hold property of, for or on

account of the Defendants.

9.    Plaintiff seeks to serve the prayed for Process of Maritime Attachment and

Garnishment with all deliberate speed so that it may be fully protected against the potential of

being unable to satisfy an award/judgment ultimately obtained and entered against the

Defendants.

10.    To the extent that this application for an Order appointing a special process server

with respect to this attachment and garnishment does not involved a restraint of physical

property, there is no need to require that the service be effected by the Marshal as it involves

simple delivery of the Process of Maritime Attachment and Garnishment to the various

garnishees to be identified in the writ.

&ndash;3&ndash;

### PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

11.     Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation to be holding, or believed to be holding, property of the Defendants, within this District.  Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the court amended Process seeking simply to identify other garnishee(s).

### PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

12.     Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served through the next day, provided that process is served the next day, to authorize service of process via facsimile or e-mail following initial *in personam* service.

13.     This is Plaintiff's first request for this relief made to any Court.

Dated: June 5, 2008
         Southport, CT

                                                    _Lauren C. Davies_
                                                    Lauren C. Davies

Sworn and subscribed to before me
this 5th day of June 2008.

_Dawn Kubie_
Notary Public

−4−

# EXHIBIT 2

# NYS Department of State

## Division of Corporations

### Entity Information

---

Selected Entity Name: RENAISSANCE GROUP RUSSIA

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | RENAISSANCE INSURANCE GROUP LIMITED |
| **Initial DOS Filing Date:** | NOVEMBER 27, 2007 |
| **County:** | NEW YORK |
| **Jurisdiction:** | SOVIET UNION |
| **Entity Type:** | FOREIGN BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
FREEHILL HOGAN & MAHAR LLP
ATTN: MICHAEL UNGER
80 PINE STREET
NEW YORK, NEW YORK, 10005-1759

**Registered Agent**
MICHAEL E. UNGER
C/O FREEHILL HOGAN & MAHAR LLP
80 PINE STREET
NEW YORK, NEW YORK, 10005-1759

NOTE: New York State does not issue organizational identification numbers.

Search Results          New Search

Division of Corporations, State Records and UCC Home Page    NYS Department of State Home Page

# EXHIBIT 3

# STATE OF NEW YORK

# DEPARTMENT OF STATE

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on May 16, 2008.

Paul LaPointe
Special Deputy Secretary of State

Rev. 06/07

New York State
Department of State
Division of Corporations, State Records
and Uniform Commercial Code
41 State Street
Albany, NY 12231
www.dos.state.ny.us

# 071127000104

## APPLICATION FOR AUTHORITY
## OF

## Renaissance Insurance Group Limited

*(Insert corporate name)*

Under Section 1304 of the Business Corporation Law

FIRST: The name of the corporation is:

## Renaissance Insurance Group Limited

If the name does not contain a required word or abbreviation indicating corporate character pursuant to § 301 of the Business Corporation Law, the corporation agrees to add the word or abbreviation to the end of its name for use in this state.

(Do not complete this section unless the corporation's true name is not available pursuant to §301 or § 302 of the Business Corporation Law.) The fictitious name under which the corporation will do business in New York is:

## Renaissance Group Russia

SECOND:  The jurisdiction in which the corporation was organized is:

**Russian Federation**   The date of its incorporation is: **22.09.1993**

THIRD:  This corporation is formed to engage in any lawful act or activity for which a corporation may be organized under the Business Corporation Law, provided that it is not formed to engage in any act or activity requiring the consent or approval of any state official, department, board, agency or other body without such consent or approval first being obtained.

FOURTH:    The county within this state in which the office of the corporation is to be located is: **NEW YORK**               . (A county in New York State must be stated. Please note that the corporation is not required to have an actual physical office in this state.)

DOS-1336 (Rev. 11/06)               -1-

**FIFTH:** The secretary of state is designated as agent of the corporation upon whom process against the corporation may be served. The address to which the secretary of state shall mail a copy of any process accepted on behalf of the corporation is:

**FREEHILL HOGAN & MAHAR LLP**
**80 Pine Street**
**New York, New York**
**10005-1759**
**Attn: Michael Unger**

**SIXTH:** *(Check the statement that applies.)*

[✓]   The foreign corporation has not since its incorporation or since the date its authority to do business in New York was last surrendered, engaged in any activity in this state.

[ ]   The consent of the State Tax Commission is attached.

X ............................
*Signature*

# Natalia Karpova
*Name of signer*

# Vice President
*Title of signer*

-2-

**STATE OF NEW YORK
INSURANCE DEPARTMENT
ONE COMMERCE PLAZA
ALBANY, NEW YORK 12257**

Eliot Spitzer
Governor

Eric R. Dinallo
Superintendent

November 19, 2007

Michael E. Unger, Esq.
Freehill, Hogan & Mahar LLP
80 Pine Street
New York, NY 10005-1759

Re: Renaissance Insurance Group, Ltd.
Use of Fictitious Name
Renaissance Group Russia

Dear Mr. Unger:

Your firm has requested this Department's consent to the use of the fictitious name Renaissance Group Russia by the corporation named Renaissance Insurance Group, Ltd., in connection with this entity's proposed establishment of a liaison office in New York. This consent is required because the corporation's actual name includes the word "Insurance". This Department will not consent to the use of this company's actual name in New York, as it's actual name suggest it is a licensed insurer, when such is not the case.

The Insurance Department hereby consents to the use of the fictitious name Renaissance Group Russia by Renaissance Insurance Group, Ltd., in New York pursuant to Section 301 of the Business Corporation Law. This consent is expressly conditioned upon the understanding that the company will use the name Renaissance Group Russia and not its actual name in New York.

Very truly yours,

Patrick M. Harrigan
Associate Attorney
Office of General Counsel
(518) 474-6623

PMH/nap

Translated from Russian language by translation bureau LLC "Alva"

## Extract

## Out of Unified register of legal entities

<u>30.07.2007</u>                                        No B427247/2007

Present extract includes record about a legal entity

### "Renaissance Insurance Group" Limited
(full name and legal form of the legal entity)

### 1027739586233
(Primary State Registration Number)

Included in the Unified State Register of Legal Entities in accordance with address of a legal entity and further criterions:

### Information about legal form and full name of the legal entity:

| 1 | Full name | "Renaissance Insurance Group" Limited |
|---|---|---|
| 2 | Abbreviated name | "Renaissance Insurance Group" Ltd |
| 3 | Branded name | No |
| 4 | Foreign name | "Renaissance Insurance Group" Limited |
| 5 | Russian language name | No |
| 6 | Russian language | No |
| 7 | Foreign Language | English |
| 8 | Legal form | Limited Company |
| 9 | Identity number of taxpayer (INT) | 7724023076 |
| 10 | Code of reason of organization for accounts (CROA) | 775001001 |

### Information about address (place of location) of legal entity

| | Information about implement of address | |
|---|---|---|
| 11 | Type of address | Permanent operating executive organization |
| 12 |  | No |
| | Address (place of location) of legal entity | |
| 13 | State | Russian Federation |
| 14 | Post index | 115114 |
| 15 | Subject of Russian Federation | MOSCOW |
| 16 | District | No |
| 17 | City | No |
| 18 | Place | No |
| 19 | Street (avenue, lane etc) | DERBENEVSKAYA EMBANKMENT |
| 20 | Building number | 7 |
| 21 | Corps (building) | 22 |

| 22 | Apartment (office) | No |
|----|--------------------|----|

| | Contact phone number | |
|----|--------------------|----|
| 23 | City code | 095 |
| 24 | Phone number | 7751050 |
| 25 | Fax number | No |

**Information about authorized capital (authorized fund, joint-stock payments)**

| 26 | Type of capital | Authorized capital |
|----|-----------------|--------------------|
| 27 | Capital amount | 210080000.00 |

**Information about state of legal entity and registration organization**

| 28 | Information about state of the legal entity | Valid |
|----|---------------------------------------------|-------|
| 29 | Name of registration organization | District inspection of Ministry of Taxation of Russian Federation No 44 in Moscow |

**Information about foundation of the legal entity**

| 30 | Event attached with record inclusion | Registration of the legal entity before 01.07.2002 |
|----|--------------------------------------|---------------------------------------------------|
| 31 | Date of record inclusion | 22.09.1993 |
| 32 | Registration number | 652.626 |
| 33 | Name of registration organization | State foundation Moscow registration chamber |

**Information about founders – Russian legal entities**

| 34 | Quantity of founders | 2 |
|----|----------------------|---|
| | 1 | |
| 35 | Identity number of taxpayer (INT) | 7709219317 |
| 36 | Code of reason of organization for account (CROA) | 771001001 |
| 37 | Full name | "Holding Renaissance Insurance" Limited |
| 38 | Legal form | Limited company |
| 39 | Authorized capital amount | 1951594000.00 |
| | Address (place of location) of founder (legal entity) | |
| 40 | Post index | 123009 |
| 41 | Subject of Russian Federation | MOSCOW |
| 42 | District | No |
| 43 | City | No |
| 44 | Place | No |
| 45 | Street (avenue, lane eve) | VOZNESENSKIY LANE |
| 46 | Number of the building | 22 |
| 47 | Corps (building) | No |
| 48 | Apartment (office) | No |

| 49 | City code | 495 |
|----|-----------|-----|
| 50 | Phone number | 7251050 |
| 51 | Fax number | 7255081 |
| | **Information about registration of founder (legal entity)** | |
| 52 | Primary state register number date | 24.10.2002 |
| 53 | Primary state register number | 1027739446624 |
| 54 | Name of registration organization | No |
| | 1 | |
| 55 | Identity number of taxpayer (INT) | 7825007514 |
| 56 | Code of reason of organization for account (CROA) | 783501001 |
| 57 | Full name | Joint-stock company Insurance Society "Progress Neva" |
| 58 | Legal entity | Joint Stock Company |
| 59 | Capital amount | 149206000.00 |
| | **Address of founder (legal entity)** | |
| 60 | Post index | 196084 |
| 61 | Subject of Russian Federation | SAINT-PETERSBURGH |
| 62 | District | No |
| 63 | City | No |
| 64 | Place | No |
| 65 | Street (avenue, lane etc) | MOSKOVSKIY AVENUE |
| 66 | Number of the building | 79A |
| 67 | Corps (building) | No |
| 68 | Apartment (office) | No |
| 69 | City code | No |
| 70 | Phone number | 812 118 66 06 |
| 71 | Fax number | No |
| | **Information about registration of founder (legal entity)** | |
| 72 | Date of primary state register number | 31.12.2002 |
| 73 | Primary state register number | 1027809260148 |
| 74 | Name of register organization | No |

**Information about active capacity humans committed to act on behalf of the company without a letter of attorney.**

| 75 | Quantity of persons | 1 |
|----|---------------------|---|
| | 1 | |
| 76 | Position | General director |
| 77 | Family | Podberezskaya |
| 78 | Name | Elena |
| 79 | Surname | Vladimirovna |

| Extract arranged by | District Inspection of Ministry of Taxation of Russian Federation No 46 in Moscow |
|---|---|
| Position of liable person | |
| Signature | |
| Family, name, surname | |

Coat-of-arms Seal: District Inspection of
Ministry of Taxation of the
Russian Federation No 46 Moscow

Certified legalybu

Sypsorov, M.N

Foreign Consul LLP

Kord cus...s I J

(Translation bureau)



# ВЫПИСКА

## Из Единого государственного реестра юридических лиц

30.10.2007                                                № 0427247/2007

(дата)

Настоящая выписка содержит сведения о юридическом лице

Общество с ограниченной ответственностью "Группа Ренессанс Страхование"

(полное наименование юридического лица)

1027739306234

(основной государственный регистрационный номер)

включенном в Единый государственный реестр юридических лиц по месту
нахождения данного юридического лица, по следующим показателям:

### Сведения об организационно-правовой форме и наименовании юридического лица

| 1 | Полное наименование | Общество с ограниченной ответственностью "Группа Ренессанс Страхование" |
|---|---|---|
| 2 | Сокращенное наименование | ООО "Группа Ренессанс Страхование" |
| 3 | Фирменное наименование | нет |
| 4 | Иностранное наименование | Renaissance Insurance Group Limited |
| 5 | Наименование на языке РФ | нет |
| 6 | Язык РФ | нет |
| 7 | Иностранный язык | английский |
| 8 | Организационно-правовая форма | Общество с ограниченной ответственностью |
| 9 | Идентификационный номер налогоплательщика (ИНН) | 7724023076 |
| 10 | Код причины постановки на учет (КПП) | 775001001 |

### Сведения об адресе (месте нахождения) юридического лица

| Сведения о принадлежности адреса | | |
|---|---|---|
| 11 | Тип адреса | Постоянно действующего исполнительного органа |
| 12 | ИМНС | нет |
| Адрес (место нахождения) юридического лица | | |
| 13 | Страна | Российская Федерация |
| 14 | Почтовый индекс | 115114 |
| 15 | Субъект Российской Федерации | МОСКВА |
| 16 | Район | нет |
| 17 | Город | нет |
| 18 | Населенный пункт | нет |
| 19 | Улица (проспект, переулок и т.п.) | ДЕРБЕНЕВСКАЯ НАБ |
| 20 | Номер дома (владение) | 7 |
| 21 | Корпус (строение) | 22 |



| 22 | Квартира (офис) | нет |
|----|----|----|
| | **Контактный телефон** | |
| 23 | Код города | 095 |
| 24 | Телефон | 7261050 |
| 25 | Факс | нет |

**Сведения об уставном капитале (складочном капитале, уставном фонде, паевых взносах)**

| 26 | Вид капитала | Уставный капитал |
|----|----|----|
| 27 | Размер капитала | 210000000,00 |

**Сведения о состоянии юридического лица и регистрирующем органе, в котором находится регистрационное дело**

| 28 | Сведения о состоянии юридического лица | Действующее |
|----|----|----|
| 29 | Наименование регистрирующего органа, в котором находится регистрационное дело | Межрайонная инспекция МНС России №44 по г. Москве |

**Сведения об образовании юридического лица**

| 30 | Событие, с которым связано внесение записи | Регистрация юридического лица до 01.07.2002 при создании |
|----|----|----|
| 31 | Дата внесения записи | 22.04.1993 |
| 32 | Регистрационный номер | 032.626 |
| 33 | Наименование регистрирующего органа, в котором внесена запись | Государственное учреждение Московская регистрационная палата |

**Сведения об учредителях - российских юридических лицах**

| 34 | Количество учредителей - российских юридических лиц | 2 |
|----|----|----|
| | 1 | |
| 35 | Идентификационный номер налогоплательщика (ИНН) | 7709219317 |
| 36 | Код причины постановки на учет (КПП) | 771001001 |
| 37 | Полное наименование | Общество с ограниченной ответственностью "Холдинг Ренессанс Страхование" |
| 38 | Организационно-правовая форма | Общество с ограниченной ответственностью |
| 39 | Размер уставного вклада | 195390000,00 |
| | **Адрес (место нахождения) учредителя - юридического лица** | |
| 40 | Почтовый индекс | 125009 |
| 41 | Субъект Российской Федерации | МОСКВА |
| 42 | Район | нет |
| 43 | Город | нет |
| 44 | Населенный пункт | нет |
| 45 | Улица (проспект, переулок и т.п.) | ВОЗНЕСЕНСКИЙ ПЕР |
| 46 | Номер дома (владение) | 22 |
| 47 | Корпус (строение) | нет |
| 48 | Квартира (офис) | нет |

| 49 | Телефонный код города | 938 |
| 50 | Номер телефона | 725 50 80 |
| 51 | Номер факса | 725 50 01 |
| Сведения о регистрации учредителя – российского юридического лица | | |
| 52 | Дата ОГРН | 26.10.2002 |
| 53 | Основной государственный регистрационный номер | 1027739446624 |
| 54 | Наименование регистрирующего органа | нет |
| | | 2 |
| 55 | Идентификационный номер налогоплательщика (ИНН) | 7825289614 |
| 56 | Код причины постановки на учет (КПП) | 783501001 |
| 57 | Полное наименование | Закрытое акционерное общество "Страховое общество "Прогресс-Нева" |
| 58 | Организационно-правовая форма | Закрытое акционерное общество |
| 59 | Размер уставного вклада | 149296000.50 |
| Адрес (места нахождения) учредителя – юридического лица | | |
| 60 | Почтовый индекс | 196084 |
| 61 | Субъект Российской Федерации | САНКТ-ПЕТЕРБУРГ |
| 62 | Район | нет |
| 63 | Город | нет |
| 64 | Населенный пункт | нет |
| 65 | Улица (проспект, переулок и т.п.) | МОСКОВСКИЙ ПР-КТ |
| 66 | Номер дома (владения) | 79А |
| 67 | Корпус (строение) | нет |
| 68 | Квартира (офис) | нет |
| 69 | Телефонный код города | нет |
| 70 | Номер телефона | 812 118.86 06 |
| 71 | Номер факса | нет |
| Сведения о регистрации учредителя – российского юридического лица | | |
| 72 | Дата ОГРН | 11.12.2002 |
| 73 | Основной государственный регистрационный номер | 1027809201148 |
| 74 | Наименование регистрирующего органа | нет |

Сведения о физических лицах, имеющих право без доверенности действовать от имени юридического лица

| 75 | Количество лиц | 1 |
| | | 1 |
| 76 | Должность | Генеральный директор |
| 77 | Фамилия | ПОДБЕРЕЗСКАЯ |
| 78 | Имя | ЕЛЕНА |
| 79 | Отчество | ВЛАДИМИРОВНА |

| Выписка сформирована: | Инспекцией министерства федеральной налоговой службы N 46 по г. Москве |
|---|---|
| Должность уполномоченного лица | |
| Подпись | |
| Фамилия, имя, отчество | |



071127000|04

# APPLICATION FOR AUTHORITY
## OF

## Renaissance Insurance Group Limited
*(Insert corporate name)*

Under Section 1304 of the Business Corporation Law

Filed by:  Michael Unger c/o Freehill Hogan & Mahar LLP
*(Name)*

80 Pine Street
*(Mailing address)*

New York, New York 10005-1759
*(City, State and Zip code)*

STATE OF NEW YORK
DEPARTMENT OF STATE

NOV 2 7 2007

FILED
TAX $ _____
BY: _____

Note: This form was prepared by the New York State Department of State for filing an application for authority for a business corporation. It does not contain all optional provisions under the law. You are not required to use this form. You may draft your own form or use forms available at legal stationery stores. The Department of State recommends that legal documents be prepared under the guidance of an attorney. Annexed to the application for authority must be a Certificate of Existence from the official who files and maintains incorporation records in the jurisdiction of the corporation's incorporation. (Please note: This official is generally the Secretary of State and many jurisdictions refer to the Certificate of Existence as a Certificate of Good Standing.) The application must be submitted with a $225 filing fee. Checks should be made payable to the Department of State.

-3-
2007 NOV -9 PM 4:02

071127000|20

RECEIVED    2007 NOV 27 AM 9:19

FILED

# EXHIBIT 4

A **professional service corporation** may be formed by filing a Certificate of Incorporation pursuant to **Section 1503 of the Business Corporation Law**. "Profession," as defined in **Section 1501(b) of the Business Corporation Law**, includes any practice as an attorney and counselor-at-law, or as a licensed physician, and those occupations designated in **Title Eight of the Education Law**. For a listing of professional services, please see NYS Department of Education, Office of the Professions.

A Certificate of Good Standing from the appropriate Appellate Division or a Certificate of Authority (Form PLS709) under seal from the New York State Department of Education, Division of Professional Licensing Services, Corporations Unit, 89 Washington Avenue, 2nd Floor, Albany, NY 12234, must be submitted with the Certificate of Incorporation.

The completed certificate and statutory filing fee of $125, plus the applicable tax on shares pursuant to **Section 180 of the Tax Law**, should be forwarded to the NYS Department of State, Division of Corporations, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231.

- Fillable Professional Service Certificate of Incorporation Form (23KB Typeable PDF Form) (2 pages)
- New York "Business Corporation Law" Text at NYS Senate Site
- New York "Tax Law" Text at NYS Senate Site
- Payment by Credit Card



## Application for Authority
*Foreign Corporations*

A **foreign business corporation** may apply for authority to do business in the State of New York by filing an Application for Authority pursuant to **Section 1304 of the Business Corporation Law**.

The Department of State does not give opinions as to what activities constitute doing business in New York State for qualification purposes. You may wish to review a Legal Memorandum entitled "Doing Business" in New York: An Introduction to Qualification for further clarification.

**Section 301 of the Business Corporation Law** includes provisions relating to the name of the corporation. For example, the name of the proposed corporation must end with the word "Incorporated" or another word or abbreviation indicative of corporate character. In addition, certain words and phrases require the consent or approval from another state agency prior to filing the document with the Division of Corporations. If there is any doubt as to what, if any, consents or approvals may be required, the Division of Corporations or the agency in question should be contacted prior to submitting the document for filing to the Division of Corporations.

Attached to the Application for Authority must be a Certificate of Existence from the official who files and maintains corporate records in the jurisdiction of the corporation. The Certificate of Existence must be dated within one year. (*Please Note*: This official is generally the Secretary of State, and many jurisdictions refer to the Certificate of Existence as a Certificate of Good Standing.)

The completed Application for Authority and statutory filing fee of $225, made payable to the Department of State, should be forwarded to the Department of State, Division of Corporations, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231. **However**, if the foreign corporation has been conducting business in New York State prior to filing its Application for Authority, it must obtain the consent of the State Tax Commission (*§1304 (a)(8), Business Corporation Law*). To obtain the consent, the completed Application for Authority and fees must be sent to the Department of Taxation and Finance, Corporation Tax Bureau, W.A. Harriman State Campus, Albany, NY 12227. Upon consenting to the filing, the Department of Taxation and Finance will forward the Application for Authority and fees directly to the Department of State for filing.

- Fillable Application for Authority Form (114KB PDF Form) (4 pages)
- New York "Business Corporation Law" Text at NYS Senate Site
- New York State Department of Taxation and Finance
- Payment by Credit Card

**NYS Department of State**                                      **Counsel's Office**

# Legal Memorandum CO01
# "DOING BUSINESS" IN NEW YORK:
# AN INTRODUCTION TO QUALIFICATION

### General Guidelines

Certain organizations formed outside New York may not do business in New York until authorized to do so. Called "foreign," whether formed in another state of the United States or in another country, such organizations include for-profit and not-for-profit corporations, limited liability companies, and limited partnerships. *See generally*, Business Corporation Law §§ 1301 - 1320 (for-profit corporations), Limited Liability Company Law §§ 801 - 809 (limited liability companies), Not-for-Profit Corporation Law §§ 1301 - 1321 (not-for-profit corporations), and Partnership Law § 121-901 - 121-908 (limited partnerships). (For simplicity and for reasons of history, much of this discussion will refer to corporations. In context, such a reference should be taken as including other forms.) The requirement to obtain authority to do business exists to protect domestic organizations from unfair competition and to place domestic and foreign organizations on an equal footing. "Fairness and justice require that when a foreign corporation comes into our State to conduct business under similar methods and to the same degree it does in its own state, or as do our domestic corporations, that such a corporation should be subject to New York laws and regulations as a recompense for the advantages enjoyed by it." *William L. Bonnell Co. v. Katz*, 23 Misc.2d 1028, 1031, 196 N.Y.S.2d 763, 768 (Sup. Ct. 1960).

Organizations obtain authority to do business in New York by making a filing, an "application for authority," in the Department of State. The effect of an application for authority is twofold: the organization acknowledges that it considers itself to be doing business in the state, and it facilitates legal and administrative proceedings by specifying in the application for authority where and in what manner the organization may be served with process. The application for authority does not subject the foreign organization to any substantive regulation that does not also apply to a foreign organization doing business without authority.The consequence of doing business without authority is that the organization may not affirmatively use New York courts until it obtains authority and pays all arrears in fees, penalties, and taxes.

The ability of a state to require a foreign corporation to apply for authority (or "to take out a license" or "to qualify") traces to *Paul v. Virginia*, 75 U.S. (8 Wall.) 168 (1868). It holds that only natural persons are "citizens" within the meaning of the Privileges and Immunities Clause. U.S. Constitution art. IV, § 2. From this it follows that a state has the power to exclude a foreign corporation from doing intrastate business within its borders. However, no state may exclude or condition admission of a foreign corporation that engages solely in interstate or foreign commerce. The Commerce Clause, U.S. Constitution art. I, § 8, cl. 3, commits to Congress, and impliedly withholds from states, the power to regulate interstate and foreign commerce. Holding that a corporation engaged in interstate commerce need not comply with a foreign corporation statute, the U.S. Supreme Court said, "A corporation of one state may go into another, without obtaining the leave or license of the latter, for all the legitimate purposes of [interstate] commerce; and any statute of the latter state which obstructs or lays a burden on the exercise of this privilege is void under the commerce clause." *Dahnke-Warner Milling Co. v. Bondurant*, 257 U.S. 282, 290 (1921). *See also, International Textbook Company v. Tone*, 220 N.Y. 313, 115 N.E. 914 (1917) ("We have steadily upheld the right of foreign corporations, without aid of any license, to engage in activities incidental to commerce between the states." 220 N.Y. at 318.).

Whether an organization is "doing business" sufficient to require it to qualify is often the source of

confusion. In part this is because we tend no longer to think about organizations, especially corporations, in the same way as do the historical cases. Another source of confusion is the fact that Business Corporation Law § 1301(b) and its analogs do not define doing business; they contain only a nonexclusive list of what does not constitute doing business. (See the discussion below.) Yet more confusion stems from use of the same term, "doing business," in two other separate, but related, contexts: whether a corporation's activities in a state are sufficient to subject it to personal jurisdiction and whether a corporation's presence within a state requires it to pay taxes. Before any further discussion of qualification, some discussion of these other uses of the term is worthwhile.

The power of New York courts to subject a foreign corporation to personal jurisdiction because it is "doing business" in the state derives from case law. Courts continue to exercise the power by virtue of Civil Practice Law and Rules § 301. In this sense of the term, "a foreign corporation is amenable to suit in New York courts if it is 'engaged in a continuous and systematic course of "doing business" here as to warrant a finding of its "presence" in this jurisdiction'." *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 227 N.E.2d 851, 281 N.Y.S.2d 21 (1967) quoting *Simonson v. International Bank*, 14 N.Y.2d 281, 285, 200 N.E.2d 427, 429, 251 N.Y.S.2d 433, 436 (1964). *See also, Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 77 N.Y.2d 28, 565 N.E.2d 488, 563 N.Y.S.2d 21 (1990). This test of "doing business" is a simple and pragmatic one, which varies in its application depending on the particular facts of each case. *Bryant v. Finnish National Airline*, 15 N.Y.2d 426, 432, 208 N.E.2d 439, 441-2, 260 N.Y.S.2d 625, 629 (1965). *See*, D. Siegel, *New York Practice*, §§ 82, 83. A court must be able to say from the facts that the corporation is present "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917).

The traditional test of doing business for purposes of CPLR § 301 is more demanding than that for longarm jurisdiction under CPLR § 302(a)(1). CPLR § 302 discards the traditional concept of doing business for a broader standard, that of transacting any business. It also abandons the requirement of the defendant's presence." However, even CPLR §302 fails to exhaust the full jurisdictional potential permissible under the due process clause of the federal constitution. *See Simonson v. International Bank, supra, and Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8 (1965). The classic statement of that principle is that for a state to assert jurisdiction the defendant must have "certain minimum contacts . . . such that the maintenance of suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316; 66 S.Ct. 154, 158, 90 L. Ed. 95 (1945). A party subjects itself to jurisdiction consistent with traditional notions of fair play and substantial justice when it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denkcla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Conducting activities without the state that are purposefully directed at the forum state also satisfies the constitutional standard. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being brought into court there. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 1000 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Constitutional limitations on the authority of a state to collect taxes from a foreign business engaged in interstate commerce derive from two sources. The first is the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, pertaining the jurisdiction to tax. *Wisconsin v. Penney Co.*, 311 U.S. 435, 445, 61 S.Ct. 246, 250, 85 L.Ed. 267 (1940). For a state to validly tax an interstate commercial activity, it must have "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344-5, 74 S.Ct. 535, 538, 98 L.Ed.2d 744 (1953).

The second source is the Commerce Clause. *Complete Auto Transit v. Brady*, 430 U.S. 274, 287-9, 97 S.Ct. 1076, 1083-84, 51 L.Ed.2d 326 (1977) outlines the Commerce Clause approach to taxation issues. It sets out a four-pronged standard for determining the validity of a state tax on interstate commercial activity: (1) The taxed activity must have a substantial nexus with the taxing jurisdiction; (2) the tax must be fairly apportioned; (3) the tax must not discriminate against interstate commerce; and (4) the tax must be fairly related to the services provided by the state. 430 U.S. at 279, 97 S.Ct. at 1079. This analysis, with some modification, is still followed. *See, National Geographic v. California Equalization Board*, 430 U.S. 551, 97 S.Ct. 1386, 51 L. Ed.2d 631(1977), *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 99 S.Ct. 1813, 60 L.Ed. 336 (1979), *Quill Corp. v. North Dakota*, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), and *Oklahoma Tax Commission v. Jefferson Lines*, 514 U.S. 175, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995). *See also, Homier Distributing Co., Inc. v. City of Albany*, 90 N.Y.2d 153, ___ N.E. 2d ___, 656 N.Y.S. 2d 223 (1997), *Matter of Orvis Co. v. Tax Appeals Tribunal*, 86 N.Y.2d 165, 654 N.E.2d 954, 630 N.Y.S.2d 690 (1995), *cert. den.* 64 U.S.L.W. 2012, 116 S.Ct. 518, and *Ontario Trucking Association v. Department of Taxation and Finance*, 168 Misc. 2d 648, 640 N.Y.S. 2d 377 (1996).

Debating whether the jurisdictional doing business test and the taxation doing business test are the same is not necessary nor fruitful here. What is important is that it takes a higher level of contact to invoke the qualification requirement. *Invacare Corp. v. John Nageldinger & Son, Inc.*, 576 F. Supp. 1542 (E.D.N.Y. 1984), *Storwal International, Inc. v. Thom Rock Realty Co., L.P.*, 784 F. Supp. 1141 (S.D.N.Y. 1992). It follows that if an organization is not doing business that subjects it to jurisdiction or taxation, it is not doing business that requires qualification. Conversely, by qualifying an organization concedes that it is subject to jurisdiction and taxation. Above the jurisdiction and taxation minimum contacts, however, not all business activity engaged in by a foreign organization rises to "doing business" in the qualification sense *Von Arx, A.G. v. Breitenstein*, 52 A.D.2d 1049, 384 N.Y.S.2d 895 (4th Dept. 1976), *aff'd* 41 N.Y.2d 958, 363 N.E.2d 582, 394 N.Y.S.2d 876 (1977).

Lending support to the assertion that more is necessary for qualification purposes are the cases that articulate the test as one of corporate continuity of conduct here. *Penn Collieries Co. v. McKeever*, 183 N.Y. 98, 75 N.E. 955 (1905) (To be "doing business in this State" implies corporate continuity of conduct in that respect. 183 N.Y. at 103), *International Fuel & Iron Corp. v. Donner Steel Co.*, 242 N.Y. 224, 151 N.E. 214 (1926) ("[T]he foreign corporation must do more than make a single contract, engage in an isolated piece of business, or an occasional undertaking; it must maintain and carry on business with some continuity of act and purpose." 242 N.Y. at 230). For the qualification requirement to apply, the local or intrastate contacts with New York must be permanent, continuous, and regular. *Netherlands Shipmortgage Corp. v. Madia*, 717 F.2d 731, 1984 A.M.C. 141, 72 A.L.R. Fed. 562 (2d Cir. 1983) ("New York courts have repeatedly and recently affirmed the vitality of this standard which requires the intrastate activity of a foreign corporation to be permanent, continuous, and regular for it to be doing business in New York. [Citations omitted.]"). *See also, Allenberg Cotton Co. v. Pittman*, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974); *cf. Eli Lilly & Co. v. Sav-On Drugs, Inc.*, 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961). Put another way, "[t]he 'more' that is required for section 1312 of the Business Corporation Law lies not in the quantum but rather in the nature of the business in New York." *Paper Manufacturers Co. v. Ris Paper Co.*, Inc., 86 Misc.2d 95, 98, 381 N.Y.S.2d 959, 963 (Civ. Ct. 1976).

Statute offers little guidance on the nature of the business required for qualification. For example, Business Corporation Law § 103(b) provides, "This chapter applies to commerce with foreign nations and among the several states, and to corporations formed by or under any act of congress, only to the extent permitted under the constitution and laws of the United States." However, as the preceding discussion shows, that is a truism. Beyond that, Business Corporation Law § 1301(b) and its analogs offer only nonexclusive lists of activities that do not constitute doing business. As a class these are activities that have to do with maintaining the organization's status as an entity. Examples include holding meetings of owners or managers, maintaining bank accounts, and defending actions and proceedings.

Most of the law of "doing business" is found in the decisions of courts. Those cases afford no precise measure of the extent of the activities which may be determinative of whether a foreign organization is doing business in New York for purposes of qualification. Each case must be decided on its own facts. *William L. Bonnell Co. v. Katz*, 23 Misc.2d 1028, 196 N.Y.S.2d 763 (Sup. Ct. 1960). Besides the requirements that activities exhibit local or intrastate character and be permanent, continuous, and regular, a third general factor emerges from those decisions-- the relationship of the activity to the ordinary and regular business of the organization. If the activity is vital and essential to the organization's business, it will have to qualify. If the activity is merely incidental to that business, it will not. *Cummer Lumber Co. v. Associated Manufacturers Mutual Fire Insurance Corp.*, 67 App.Div. 156, 156, 73 N.Y.S. 668, 671 (2d Dept. 1901), *aff'd mem.* 173 N.Y. 633, 66 N.E. 1106 (1903), *Penn Collieries Co. v. McKeever, supra.* The court in *Invacare Corp. v. John Nageldinger & Sons, Inc.*, 576 F. Supp. 1542 (E.D.N.Y. 1984), regarded *Parkwood Furniture Co. v. OK Furniture Co.*, 76 A.D.2d 905, 429 N.Y.S.2d 240 (2d Dept. 1980) and *Colonial Mortgage Co. v. First Federal Savings and Loan Association*, 57 A.D.2d 1046, 395 N.Y.S.2d 798 (4th Dept. 1977) as examples by which to judge other fact patterns.

This article discussed the general guidelines that inform the cases on doing business in New York for purposes of qualification. For further reading see Note, *Foreign Corporations: What Constitutes Doing Business Under New York's Qualification Statute?*, 44 Fordham Law Review 1042 (1976) and Annotation, *What Constitutes Doing Business Within State for Purposes of State "Closed-Door" Statute Barring Unqualified or Unregistered Foreign Corporation from Local Courts - Modern Cases*, 88 A.L.R. 4th 466 (1991).

February 2000

---

[ Home ] [ Counsel's Office Menu Page ] [ Legal Memoranda - Corporations ]

# EXHIBIT 5

New York State
Department of State
Division of Corporations, State Records
and Uniform Commercial Code
41 State Street
Albany, NY 12231
www.dos.state.ny.us

# APPLICATION FOR AUTHORITY
# OF

_____
*(Insert corporate name)*

Under Section 1304 of the Business Corporation Law

**FIRST:**  The name of the corporation is:



If the name does not contain a required word or abbreviation indicating corporate character pursuant to § 301 of the Business Corporation Law, the corporation agrees to add the word or abbreviation to the end of its name for use in this state.

(Do not complete this section unless the corporation's true name is not available pursuant to §301 or § 302 of the Business Corporation Law.)  The fictitious name under which the corporation will do business in New York is:




**SECOND:**   The jurisdiction in which the corporation was organized is:

The date of its incorporation is:


**THIRD:**   This corporation is formed to engage in any lawful act or activity for which a corporation may be organized under the Business Corporation Law, provided that it is not formed to engage in any act or activity requiring the consent or approval of any state official, department, board, agency or other body without such consent or approval first being obtained.


**FOURTH:**    The county within this state in which the office of the corporation is to be located is:                                        . (A county in New York State must be stated. Please note that the corporation is not required to have an actual physical office in this state.)

DOS-1335 (Rev. 11/06)

-1-

**FIFTH:**    The secretary of state is designated as agent of the corporation upon whom process against the corporation may be served. The address to which the secretary of state shall mail a copy of any process accepted on behalf of the corporation is:

**SIXTH:**  *(Check the statement that applies.)*

☐        The foreign corporation has not since its incorporation or since the date its authority to do business in New York was last surrendered, engaged in any activity in this state.

☐        The consent of the State Tax Commission is attached.

**X** _____
*Signature*


_____
*Name of signer*


_____
*Title of signer*

# APPLICATION FOR AUTHORITY
# OF

_____
*(Insert corporate name)*

Under Section 1304 of the Business Corporation Law

## Filed by:

*(Name)*

*(Mailing address)*

*(City, State and Zip code)*

Note: This form was prepared by the New York State Department of State for filing an application for authority for a business corporation. It does not contain all optional provisions under the law. You are not required to use this form. You may draft your own form or use forms available at legal stationery stores. The Department of State recommends that legal documents be prepared under the guidance of an attorney. **Annexed to the application for authority must be a Certificate of Existence from the official who files and maintains incorporation records in the jurisdiction of the corporation's incorporation. (Please note: This official is generally the Secretary of State and many jurisdictions refer to the Certificate of Existence as a Certificate of Good Standing.)** The application must be submitted with a $225 filing fee. Checks should be made payable to the Department of State.

# EXHIBIT 6

New York State
Department of State
Division of Corporations, State Records
and Uniform Commercial Code
41 State Street
Albany, NY 12231

# CERTIFICATE OF SURRENDER OF AUTHORITY
# OF

_____

*(Insert Name of Foreign Corporation)*

Under Section 1310 of the Business Corporation Law

**FIRST:** The name of the corporation as it appears on the index of names in the Department of
State is: _____.
(Complete this paragraph only if the corporation has agreed to use a fictitious name in New York State.) The fictitious
name the corporation has agreed to use in New York State is: _____

_____.

**SECOND:** The jurisdiction of incorporation of the corporation is:_____

_____.

**THIRD:** The date on which the corporation was authorized to do business in New York State is:

_____.

**FOURTH:** The corporation surrenders its authority to do business in New York State.

**FIFTH:** The corporation revokes the authority of its registered agent, if any, previously designated.

**SIXTH:** The corporation consents that process against it in any action or special proceeding based
upon any liability or obligation incurred by it within this state before the filing of the certificate of
surrender of authority may be served on the Secretary of State after the filing thereof in the manner
set forth in paragraph (b) of Section 306 (Service of process). The address to which the Secretary
of State shall mail a copy of any process against it served upon him is:_____

_____.

_____.

_____        _____
*(Signature)*                                                      *(Name of Signer)*

                                                          _____
                                                          *(Title of Signer)*

DOS-1563 (Rev. 10/07)                    -1-

# CERTIFICATE OF SURRENDER OF AUTHORITY
## OF

_(Insert Name of Foreign Corporation)_

### Under Section 1310 of the Business Corporation Law

Filer's Name _____

Address _____

City, State and Zip Code _____

NOTE: This form was prepared by the New York State Department of State. You are not required to use this form. You may draft your own form or use forms available at legal stationery stores. The Department of State recommends that all documents be prepared under the guidance of an attorney. **The certificate requires the consent of the State Tax Commission.** The Certificate of Surrender of Authority, together with the filing fee of $60 made payable to the Department of State, must be sent directly to the Department of Taxation and Finance, Corporation Tax Bureau, Dissolution Unit, State Campus, Albany, NY 12227, so that the consent of the State Tax Commission may be annexed thereto. Upon consenting to the filing, the Department of Taxation and Finance will forward the Certificate of Surrender of Authority and fees directly to the Department of State for filing.

_For Office Use Only_

-2-

Corporation Tax Dissolution Unit
Building 8, Room 958
W. A. Harriman Campus
Albany, NY 12227

Upon receipt of the consent of the State Tax Commission, the Certificate of Dissolution, and the statutory filing fee of $60 should be forwarded to the New York State Department of State, Division of Corporations, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231.

- Voluntary Dissolution of a New York Business Corporation Brochure
- Fillable Certificate of Dissolution Form (109KB PDF Form) (2 pages)
- New York "Business Corporation Law" Text at NYS Senate Site
- New York State Department of Taxation and Finance
- Payment by Credit Card



## Certificate of Surrender of Authority
*Foreign Corporations*

A foreign authorized corporation (which will remain in existence in its home state) may surrender its authority to conduct business in New York State. The authority of the foreign corporation shall terminate upon the filing of a Certificate of Surrender of Authority pursuant to **Section 1310 of the Business Corporation Law**. The Certificate of Surrender of Authority requires the consent of the State Tax Commission.

The Certificate of Surrender of Authority, together with the filing fee of $60 made payable to the Department of State, must be sent directly to the Department of Taxation and Finance, Corporation Tax Bureau, Dissolution Unit, State Campus, Albany, New York 12227, so that the consent of the State Tax Commission may be annexed thereto. Upon consenting to the filing, the Department of Taxation and Finance will forward the Certificate of Surrender of Authority and fees directly to the Department of State for filing.

- Fillable Certificate of Surrender of Authority Form (11KB PDF Form) (2 pages)
- New York "Business Corporation Law" Text at NYS Senate Site
- New York State Department of Taxation and Finance
- Payment by Credit Card



## Certificate of Termination of Existence
*Foreign Corporations*

A foreign authorized corporation that has been dissolved, merged out of existence or had its authority to conduct its business terminated or canceled in its jurisdiction of incorporation, shall file a Certificate of Termination of Existence with the New York State Department of State. A certificate, which includes a termination statement, under seal of the Secretary of State or equivalent official of the corporation's jurisdiction, must be submitted. Please note a certified copy of the filing is not acceptable. Please see **Section 1311 of the Business Corporation Law**. The certificate must be enclosed in a white cover sheet that sets forth the title of the document and the name and address

# EXHIBIT 7

**LexisNexis®** *Total Research System*

Custom ID ▾ | Tisdale & Lennon | Switch Client | Preferences | Sign Off | ? Help

My Lexis™ \ Search \ Research Tasks \ Get a Document \ Shepard's® \ Alerts \ Total Litigator \ Transactional Advisor \ Counsel Selector \   Dossier | History ⌂

Service: Get by LEXSTAT®
TOC: New York Consolidated Laws Service > / .... / > ARTICLE 11. LICENSING OF INSURERS > § 1106. Additional requirements for foreign or alien insurer's license
Citation: ny cls ins 1106

*NY CLS Ins § 1106*

Retrieve State Legislative Impact® ($)

NEW YORK CONSOLIDATED LAW SERVICE
Copyright (c) 2008 Matthew Bender & Company, Inc.
one of the LexisNexis (TM) companies
All rights reserved

*** THIS SECTION IS CURRENT THROUGH CH. 59, 04/23/2008 ***

INSURANCE LAW
ARTICLE 11. LICENSING OF INSURERS

**Go to the New York Code Archive Directory**

NY CLS Ins § 1106 (2008)

**· Practitioner's Toolbox** 🔲 🔲

± Case Notes

± Legislative History

Resources & Practice Tools

⊟ Treatises & Practice Guides

> New York Insurance Law (Matthew Bender's New York Practice Series) §§ 1.01, 102[2], 1.03[1], 1.06[4], 1.08[1], 7.02[2], 1.4[, [5], [6], 7.03 [1], [2], 8.07, 9.04[2fl, 11.04[8], 22.05[8a][ii], 23.02[7]

± More...

⊕ Related Statutes & Rules

§ 1106. Additional requirements for foreign or alien insurer's license

   (a) Before issuing a license to do business, except by way of a renewal license, to any foreign or alien insurer the superintendent in addition to the requirement set forth in subsection (b) hereof:

(1) shall require it to submit for filing a certified copy of its charter, and of its by-laws, if any, currently in force, and such other documents necessary to show the kinds of business which it is empowered to do, and a full statement, subscribed and affirmed as true under the penalties of perjury by two officers or responsible representatives in such manner as the superintendent shall prescribe, showing its assets, liabilities and financial condition; and

(2) may require a full statement of its income, disbursements, business done, and other facts required to be shown in its annual statement; and

(3) may either make an examination of the insurer's affairs at its principal office within the United States, or accept a report of an examination made by the insurance department or other insurance supervisory official of any other state or of any government outside the United States.

(b) (1) Before issuing any new or renewal license to any foreign or alien insurer, the superintendent may require satisfactory proof, either in the insurer's charter or by an agreement evidenced by a duly certified resolution of its board of directors, or otherwise as the superintendent may require, that such insurer will not engage in any insurance business in contravention of the provisions of this section or not authorized by its charter.

(2) The superintendent shall issue a renewal license to any foreign or alien insurer if satisfied, by such proof as he may require, that such an insurer is not delinquent with respect to any requirement imposed by this chapter and that its continuance in business in this state will not be hazardous or prejudicial to the best interests of the people of this state.

(c) No foreign insurer shall be licensed to do in this state any kind of insurance business, or combination of kinds of insurance business, which are not permitted to be done by domestic insurers hereafter to be licensed under the provisions of this chapter. No foreign insurer shall be authorized to do business in this state if it does in this state or elsewhere any kind of business, other than an insurance business and such business as is necessarily or properly incidental to the kind or kinds of insurance business which it is licensed to do in this state.

(d) No alien insurer shall be licensed to do in this state any kind of insurance business, or any combination of kinds of insurance business, which are not permitted to be done by domestic insurers hereafter to be licensed under the provisions of this chapter. No alien insurer shall be authorized to do an insurance business in this state if it does anywhere within the United States any kind of business other than an insurance business and such business as is necessarily or properly incidental to the kind or kinds of insurance business which it is authorized to do in this state.

(e) Except as otherwise specifically provided in this chapter no foreign insurer and no United States branch of an alien insurer shall be or continue to be authorized to do an insurance business in this state if it fails to comply substantially with any requirement or limitation of this chapter, applicable to similar domestic insurers hereafter to be organized, which in the judgment of the superintendent is reasonably necessary to protect the interests of the people of this state.

(f) No foreign insurer and no United States branch of an alien insurer which does outside of this state any kind or combination of kinds of insurance business not permitted to be done in this state by similar domestic insurers hereafter organized, shall be or continue to be authorized to do an insurance business in this state, unless in the judgment of the superintendent the doing of such kind or combination of kinds of insurance business will not be prejudicial to the best interests of the people of this state.

(g) Subsections (e) and (f) hereof shall not affect the requirements of section one thousand one hundred two of this article or section four thousand two hundred five of this chapter with respect to business done within this state.

(h) Notwithstanding the provisions of subsection (c) hereof any foreign insurance company licensed to do the business of life insurance in this state continuously since January first, nineteen hundred twenty may continue to be licensed, in the discretion of the

superintendent, to do the kinds of insurance business it was authorized to do immediately prior to January first, nineteen hundred forty.

(i) (1) Notwithstanding any other provisions of this chapter, any foreign licensed mutual life insurer which intends to reorganize or convert to a stock life insurer shall file with the superintendent a copy of its plan of reorganization or conversion at least ninety days prior to the date of any public hearing required to be held on such a plan by the state of domicile of the insurer, or the proposed effective date of the reorganization or conversion, whichever is earlier.

(2) If, after examining the plan, the superintendent finds that the plan is not fair or equitable to the New York policyholders of such insurer he shall set forth the reasons for such findings and at least fifteen days prior to such hearing, or the proposed effective date of the reorganization or conversion, whichever is earlier, notify the commissioner, superintendent or director of the state of domicile and the insurer of such findings and such reasons and advise of any requirements he finds necessary for the protection of current New York policyholders in order to permit the insurer to continue to do business in New York as a stock insurer after such reorganization or conversion.

## Legislative History:

History:

Add, L 1984, ch 367, eff Sept 1, 1984.
Sub (g), amd, L 1984, ch 805, § 116, eff Sept 1, 1984.
Sub (i), add, L 1988, ch 683, § 2, eff Sept 1, 1988.

Notes:

This section formerly appeared as Ins § 42 which was added by L 1939, ch 882; amd, L 1965, ch 845; L 1973, ch 373.

## Related Statutes & Rules:

New York References:
This section referred to in §§ 4205, 4525

NYCRR References:
Statements of financial condition. 11 NYCRR §§ 75.1 et seq
Reporting of income and expenses. 11 NYCRR §§ 90.1 et seq
Allocation of income and expenses. 11 NYCRR §§ 91.1 et seq
Credit life insurance and credit accident and health insurance. 11 NYCRR §§ 185.1 et seq
Insurance department: business transactions between controlling producers and their respective controlled insurers. 11 NYCRR Subpart 80-2

## Treatises & Practice Guides:

Texts:
New York Insurance Law (Matthew Bender's New York Practice Series) §§ 1.01, 102[2], 1.03[1], 1.06[4], 1.08[1], 7.02[2], [4], [5], [8], 7.03[1], [2], 8.07, 9.04[2f], 11.04[8], 22.05[8a][ii], 23.02[7]

### Research References & Practice Aids:

68 NY Jur 2d, Insurance §§ 18, 77, 78, 84-86, 97, 124, 126, 204

Couch on Insurance 2d:
19B Appleman, Insurance Law and Practice, License, Privilege, and Franchise Taxes §§ 10925, 10926

### LexisNexis 50 State Surveys, Legislation & Regulations

Surety Insurance and Surety Bonds

## Case Notes:

± 1. In general
± 2. Application requirements
± 3. Particular grounds for denial of license or renewal
± 4. Revocation or termination of license
± 5. Applicability of local or foreign law to issues involving foreign insurers
± 6. Miscellaneous

⊤ 1. In general

§§ 40 and 42 and Art. VI [now §§ 1102, 1106 and 2101 et seq.] are constitutional. Mendola v Dineen (1945) 185 Misc 540, 57 NYS2d 219.

The joint purpose of this section appears to be to define investment of domestic companies and to rely upon the general section to insure conformity by foreign companies, except for any differences which may be expressed. Firemen's Ins. Co. v Beha (1928, DC NY) 30 F2d 539, affd 278 US 580, 73 L Ed 517, 49 S Ct 184.

This section is not unconstitutional as an attempt to exercise extra-territorial power. Firemen's Ins. Co. v Beha (1928, DC NY) 30 F2d 539, affd 278 US 580, 73 L Ed 517, 49 S Ct 184.

If coverage comes within kind of insurance that is authorized under CLS Ins § 1113, or otherwise under New York law, domestic insurer is not precluded from providing coverage outside New York that is permissible in other jurisdiction although coverage may not be written in New York. Insurance Department, Opinions of General Counsel, Opinion Number 02-11-17.

Alien insurer may be licensed in New York through business unit known as "United States branch"; specific requirements relating to licensing of alien insurer are found in CLS Ins § 1106. Insurance Department, Opinions of General Counsel, Opinion Number 03-02-10.

While CLS Ins §§ 107(44) and 1106 require that alien insurer do business in New York through United States branch, there is no similar statutory requirement for other Insurance Department licensees. Insurance Department, Opinions of General Counsel, Opinion Number 04-12-27.

⊤ 2. Application requirements

An incorporated alien insurer is not required to designate a residence office in its application for authority to do business filed with the secretary of state. General Acci. Fire & Life Assur. Corp. v Alicity Ins. Co. (1967) 53 Misc 2d 596, 279 NYS2d 422.

A foreign insurance company seeking to do business in this state must file a copy of charter certified to by an official having custody of the original charter. 1910 Ops Atty Gen July 15.

Foreign corporation need not comply with General Corporation Law, § 210, as condition precedent to issuance of certificate. 1933 Ops Atty Gen 543.

New York Insurance Law does not prohibit payment of bonuses or other additional compensation to be made in form of insurer's stock, but options on authorized but unissued stock may not be distributed by domestic stock insurance company to anyone other than officer or employee of insurer under CLS Ins § 1207; further, requirements of CLS Ins § 1207 are deemed to apply to foreign insurers and United States branches of alien insurers via "substantial compliance" provision under CLS Ins § 1106(e). Insurance Department, Opinions of General Counsel, Opinion Number 00-10-02.

⊤ 3. Particular grounds for denial of license or renewal

As to the question of jurisdiction of the superintendent of insurance to require foreign insurance companies before receiving license here to restrict their business at all points to that which a domestic insurance company may do, it is the opinion of the attorney-general that the superintendent has that power under our statutes, and further that long continued administrative practice of the insurance department, over a period of forty or fifty years, presumably with the knowledge of the legislature, would in itself be an administrative construction of the laws which the courts would recognize even if the statutes were not themselves sufficiently clear. People ex rel. Clark v Gilchrist (1926) 243 NY 173, 153 NE 39. 1926 Ops Atty Gen Oct 14.

Refusal to renew the license of a foreign insurance company on the ground that it paid commissions in excess of the rate formulated by the New York fire insurance exchange, a voluntary association of the writers of all but a small percentage of the fire insurance business done in this state, is not justified. Northwestern Nat. Ins. Co. v Pink (1942) 288 NY 359, 43 NE2d 442.

Nothing in the statute authorizes the superintendent of insurance, in effect, to prohibit the doing of a business of fire insurance in this state by a foreign insurer unless it adopts for that purpose the rate of brokerage commission formulated by such exchange. Northwestern Nat. Ins. Co. v Pink (1942) 288 NY 359, 43 NE2d 442.

Nothing in either § 42 [now § 1106] or former § 193 [now § 4205] of the Insurance Law prohibits an out-of-state life insurance company, licensed in New York, from acquiring a controlling stock interest in a company doing a fire or casualty insurance business, and nothing in these sections will sustain refusal of the New York State Superintendent of Insurance to continue to license an out-of-state insurer seeking to make such an acquisition. Connecticut General Life Ins. Co. v Superintendent of Ins. (1961) 10 NY2d 42, 217 NYS2d 39, 176 NE2d 63.

While subd 3 of § 42 [now § 1106] of the Insurance Law and subd. 2 of former § 193 [now § 4205] of such law forbid a foreign life insurance company licensed in this state from engaging in the business of writing fire or casualty insurance, they do not forbid it from acquiring a controlling interest in stock of another insurance company writing fire or casualty insurance. Connecticut General Life Ins.

Co. v Superintendent of Ins. (1961) 10 NY2d 42, 217 NYS2d 39, 176 NE2d 63.

If the business of a foreign fire insurance company enables it to pay larger commissions to its brokers and still continue on a sound financial basis, there is no reason for refusing to renew its license on the ground that the interests of the people of the state will best be promoted. Re Northwestern Nat. Ins. Co. (1941) 262 AD 216, 28 NYS2d 492, affd 288 NY 359, 43 NE2d 442.

This section shows that it was the intent of the insurance law of this state that the standard provisions of the statute shall become a part of the policies and certificates issued and delivered in this state by a fraternal benefits society and insurance companies, whether foreign or domestic. Hence, when a fraternal benefits society issued and delivered its certificate, the standard two-year statute of limitation by operation of law became a part of the contract and superseded the inconsistent provision in the defendant's constitution and bylaws limiting the time within which an action could be commenced to six months. Sebesta v Order of United Commercial Travelers (1952) 203 Misc 379, 117 NYS2d 750.

The similarity of name of a foreign insurance company to that of a domestic company is sufficient ground for the superintendent of insurance to refuse to issue a certificate authorizing the foreign insurance company to transact business within the state, where in the superintendent's judgment such refusal best promotes the interests of the people of the state. Employers' Liability Assur. Corp. v Employers' Liability Ins. Co. (1894) 78 Hun 446, 29 NYS 217.

State statutes do not, and cannot prevent an insurance company which is not authorized to do business in this state from broadcasting advertising from outside state to listeners within state. 1929 Ops Atty Gen 252.


⏀ 4. Revocation or termination of license

A foreign insurance corporation which executed a bond as surety for the performance of a contract of its principal at a time when it was authorized to do business in this state, may collect premiums accruing thereon subsequent to expiration of its authority to do business. While the authority of a foreign corporation to do business in this state may be revoked or terminated the liability incurred while authorized to do business herein is not limited to the period during which such authority continued. American Fidelity Co. v Leahy (1919) 189 AD 242, 178 NYS 511, affd 233 NY 628, 135 NE 946.

It is universally recognized, that while the authority of foreign corporations to do business in states other than that in which they are incorporated may be revoked or terminated, liability incurred while authorized to do business in the foreign state is not limited to that period during which such authority continues. A foreign insurance company which executed a bond as surety for performance of the contract of its principal at a time when it was authorized to do business in the state may collect premiums accruing thereon subsequent to the expiration of its authority to do business. American Fidelity Co. v Leahy (1919) 189 AD 242, 178 NYS 511, affd 233 NY 628, 135 NE 946.

The privilege or franchise to conduct Lloyds is not absolutely extinguished until the state terminates the same by legislative act. The privilege to do business in Lloyds form is of value and belongs to those who at any time are in possession of a franchise which has not been declared forfeited. 1919 Ops Atty Gen Dec. 19.


⏀ 5. Applicability of local or foreign law to issues involving foreign insurers

An action against a foreign life insurance company brought by a member of the company holding one of its certificates to restrain it from making an assessment against him of more than the certain amount named in his certificate, and to compel it to account for moneys theretofore paid by him in excess of that amount, relates to internal affairs of the company, which are conducted at its home office, and its method of assessment against members for various purposes for which they are liable is governed by local laws and regulations and should be adjusted in an action brought in the home state of the company. Where it appears that company, its officers and accounts are without the state and order and decree of courts of this state could not be enforced against the corporation without its consent, the fact that defendant appeared in the action and that the court had jurisdiction of the person does not of necessity extend the jurisdiction to the subject matter of the action. The question of jurisdiction is properly raised by a demurrer to the complaint. Sauerbrunn v Hartford Life Ins. Co. (1917) 220 NY 363, 115 NE 1001, reh den 220 NY 776, 116 NE 1073.

Foreign corporation engaged in business in this state by permission of the insurance department, is a citizen of this state so far as any litigation is concerned. Contract of insurance is transitory in its nature, and upon the death of insured the beneficiary can bring an action thereon in any state where defendant is doing business, and where process can be served upon it, and of which she is resident. Webster v Columbian Nat. Life Ins. Co. (1909) 131 AD 837, 116 NYS 404, affd 196 NY 523, 89 NE 1114.

A contract of insurance issued to a subject of Great Britain by a corporation organized under the laws of that country covering accidents happening in Europe and in this country, must be construed according to the laws of Great Britain. Wilson v Central Ins. Co. (1909) 135 AD 649, 119 NYS 955, app dismd 203 NY 604, 96 NE 1134.

Although the defendant is a foreign corporation, it is not precluded from taking advantage of any defense of limitation, whether statutory or contractual. It is here by force of license sought for and granted under authority of our law, and in its transaction of business in this state it is to be dealt with pro hac vice as domestic corporation and may avail itself of a statute of limitations when it is applicable. Motion for reargument denied. Comey v United Surety Co. (1914) 160 AD 698, 145 NYS 674, affd 217 NY 268, 111 NE 832, reh den 218 NY 625, 112 NE 1055.

Where plaintiff sues in equity to compel a foreign insurance company to account for certain money alleged to be due under a contract of insurance, a demurrer to the complaint should be sustained upon the ground that the foreign insurance company cannot be called to an accounting within this state where such accounting involves matters of its internal management within its home state. Spring v Fidelity Mut. Life Ins. Co. (1918) 183 AD 134, 170 NYS 253.

Foreign insurance company, licensed only to write fidelity and surety insurance, could not agree to pay credit card debt for business using cards to pay business expenses since such insurance would constitute financial guarantee insurance as defined in CLS Ins § 6902, not credit card insurance as defined in CLS Ins § 1113(a)(17), and company was not licensed to issue such insurance; if company agreed to provide such insurance, it would violate "Appleton Rule," as codified in CLS Ins § 1106(f). Insurance Department, Opinions of General Counsel, Opinion Number 02-01-14.

∓ 6. Miscellaneous

Objections of the New York Insurance Commissioner to a plan of a Connecticut life insurance company to acquire the stock of another Connecticut company engaged in the fire insurance business, for operation as a subsidiary, on the ground that a violation of subd. 3 of this section would result, cannot be upheld; recent New York legislation did not indicate intention that limitations of this section be extended by implication to cover parent-subsidiary situations. Connecticut General Life Ins. Co. v Superintendent of Ins. (1961) 10 NY2d 42, 217 NYS2d 39, 176 NE2d 63.

While there is no precise test of the nature or extent of business required to be done by a foreign corporation to make it amenable to process in this state, all that is requisite to be shown is that the defendant is actually transacting business here "with fair measure of permanence and continuity." Henriques v Gauthiod Marine Ins. Co. (1923) 205 AD 8, 199 NYS 131.

Income and profits derived from an insurance company's investments formed part of the receipts from the business of insurance. Hence, New York City could not impose its financial tax on the income derived by a casualty company from investments on the theory that such receipts were not from the business of insurance within the meaning of the local tax law and the enabling act. (Gen City L, § 24-a). Application of American Surety Co. (1954) 284 AD 14, 130 NYS2d 79.

Where the complaint of a foreign insurance company in an action to recover the amount of premiums due on a New York insurance contract of marine insurance fails to allege that at the time the contract was made in compliance with the provisions of this section, it procured authority to transact the business of insurance, a motion by the defendant for judgment on the pleadings will be granted with leave to plaintiff to amend its complaint. Automobile Ins. Co. v Barondess (1919) 107 Misc 513, 176 NYS 839.

Foreign insurers qualifying under the Code of Criminal Procedure § 554-b, must furnish a new bond each year. 1942 Ops Atty Gen Sept 21.

Foreign insurer licensed in New York is not required to maintain physical office presence in New York. Insurance Department, Opinions of General Counsel, Opinion Number 01-04-14.

Under CLS Ins § 1106(f), language of "savings clause" in reinsurance agreement may be used if reinsurer is authorized foreign insurer in New York; however, if reinsurer is New York domestic insurer, then CLS Ins § 1102(b) prohibits it from issuing reinsurance agreement with such language. Insurance Department, Opinions of General Counsel, Opinion Number 02-06-20.

If authorized foreign or alien insurer violates Appleton Rule (codified in CLS Ins § 1106), licenses of foreign and alien insurers may be revoked under CLS Ins § 1104, while general penalty provision is CLS Ins § 109, imposing maximum monetary penalty of $ 500 for each violation of Insurance Law. Insurance Department, Opinions of General Counsel, Opinion Number 04-08-38.

United States branch of alien insurer may not be admitted to New York State as financial guarantee insurer under CLS Ins § 6902(a), even though § 6902(a) states that foreign insurer may be licensed in manner prescribed by CLS Ins § 1106, which is entitled "[a] dditional requirements for foreign or alien insurer's license"; "foreign insurer" is different from "alien insurer" as those 2 terms are defined in CLS Ins § 107. Insurance Department, Opinions of General Counsel, Opinion Number 06-01-26.

Forms:
Form 1 -- Resolution Agreeing to Compliance With Insurance Law § 1106
Form 2 -- Affidavit of No Outstanding Claims
Form 3 -- Certificate of Securities Deposit
Form 4 -- Affidavit of Reinsurance Contracts, Insurance Exchange
Form 5 -- Designation of Registered Agent for Service of Process                    Form 1
    Resolution Agreeing to Compliance With Insurance Law § 1106
        [To be enacted in addition to general resolution
        authorizing application for admission to State]

At a meeting of [-----] [the Executive Committee] of [-----] , [an insurance exchange], authorized by and existing under the laws of the State of [-----] [Missouri], held on the [---] day of [-----] , 19 [--] , at the office of [-----] , a quorum of the said [-----] [Executive Committee] was present, and on motion the following resolution was duly adopted:

RESOLVED that the [-----] having applied for authority to issue non-assessable policies in the State of New York, does hereby agree as follows:

That it will not engage in any insurance business in contravention of the provisions of § 1106 of the New York Insurance Law, nor any insurance business which it is not empowered or authorized to do by its charter;

That it will not engage in New York in any kind or combinations of kinds of insurance business not permitted to be done by similar insurers domiciled in New York;

That it will not do in New York or elsewhere any kind of business other than an insurance business and such business as is necessary or properly incidental to the kind or kinds of insurance business which it is licensed to do in New York;

That, except as otherwise specifically provided in the New York Insurance Law, it will comply substantially with any requirement or limitation of such law applicable to similar insurers domiciled in New York which in the judgment of the Superintendent of Insurance of the State of New York is reasonably necessary to protect the interests of the People of New York;

That it will not do outside of New York any kind or combinations of kinds of insurance business not permitted to be done in New York by similar insurers domiciled in New York.

[Supplied through the courtesy of Paul R. Taylor, Esq., Penn Yan, N. Y.].

Form 2
Affidavit of No Outstanding Claims
STATE OF NEW YORK INSURANCE DEPARTMENT

In the Matter of

The Application of [-----] , for

authorization to do Insurance

Business in the State of New

York

[Venue]

[-----] , being duly sworn, deposes and says that he is [-----] [Secretary-Treasurer] and Attorney-In-Fact of [-----] , with its principal office at [-----] Street, [-----] , [-----] , and that he resides in the city of [-----] in the State of [-----] and that he is in active charge of the business of [-----] That on the [---] day of [-----] , 19 [--] , and again on or about the [---] day of [-----] , 19 [--] , he caused to be made a search of the records of said [-----] , to determine whether there are any claims outstanding and unsettled under the form of automobile accident insurance policy formerly issued by this [-----] and that the results of the search were that there are no outstanding claims under such form of policy known to deponent at this time. That the last automobile accident insurance policy of the type formerly issued by this [-----] will cease to be in effect prior to [-----] , 19 [--] .
[----------]
[Jurat]

[Supplied through the courtesy of Paul R. Taylor, Esq., Penn Yan, N. Y.].
Form 3
Certificate of Securities Deposit
DEPARTMENT OF INSURANCEof theSTATE OF [-----]
THIS IS TO CERTIFY THAT

[-----] , [-----] , [-----] , as of [-----] , 19 [--] , had on deposit with the Department of Insurance of the State of [-----] , for security of policyholders and creditors, the following securities: [-----] .
IN WITNESS WHEREOF, I hereuntosign my name and affix my official seal at [-----] , [-----] , this [---] day of [-----] , 19 [--] .
(SEAL)
[----------] Superintendent of InsuranceCountersigned by: [-----] [Agency] [----------] [----------] [Vice President]
Form 4
Affidavit of Reinsurance Contracts, Insurance Exchange

[Venue]

I, [-----] , [-----] [Secretary-Treasurer] and attorney in fact of [-----] , a reciprocal inter-insurance exchange, with its principal offices in [-----] , State of [-----] , do hereby certify that the re-insurance treaties and contracts in effect for the protection and benefit of this exchange are as follows: [-----] [Short description of coverage of each and name of reinsurer].
[----------]
[Jurat]
Form 5
Designation of Registered Agent for Service of Process

[Caption, such as "Designation of Registered Agent for Service of Process of [-----] [-----] , Inc., under Business Corporation Law section 305]

[Address to the Department of State]

[-----] , Inc., a domestic corporation formed under the [-----] Law and whose certificate of incorporation was filed on the [---] day of [-----] , 19 [--] , and whose office is located at [-----] , [-----] , New York [or, a foreign corporation organized and existing under the [-----] Law of [-----] , which has been duly authorized to do business in New York under certificate filed the [---] day of [-----] , 19 [--] , and whose [principal] office is located at [-----] , [-----] in the state of [-----] ] hereby designates as its registered agent for service of process against such corporation in this state, [-----] , a natural person [or, corporation organized under the [-----] Law of this State (or, foreign corporation organized and existing under the [-----] Law of [-----] , and authorized to do business in this State)].

The business address of such designated agent for service of process is [-----] , [-----] , New York.

Dated at [-----] , this [---] day of [-----] , 19 [--] .
[Name of designating corporation]By [----------] [Secretary]

Service: Get by LEXSTAT®
TOC:  New York Consolidated Laws Service > /.../ > ARTICLE 11. LICENSING OF INSURERS > § 1106. Additional requirements for foreign or alien insurer's license
Citation:  ny cls ins 1106
View:  Full
Date/Time:  Thursday, June 5, 2008 - 3:50 PM EDT

*My Lexis*™ | Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help

LexisNexis®    About LexisNexis  | Terms & Conditions  | Contact Us
Copyright ©  2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT 8



**STATE OF NEW YORK**
**INSURANCE DEPARTMENT**
25 BEAVER STREET
NEW YORK, NEW YORK 10004

George E. Pataki                                                    Gregory V. Serio
Governor                                                              Superintendent

The Office of General Counsel issued the following opinion on January 16, 2004, representing the position of the New York State Insurance Department.

**RE: Service of Process on an Unauthorized Alien Insurer Under N.Y. Insurance Law § 1213 - Marine Insurance**

**Question Presented:**

May an unauthorized alien insurer who has placed marine insurance in New York State be sued in New York State?

**Conclusion:**

An unauthorized alien insurer who has placed marine insurance in New York State is subject to New York jurisdiction through personal service of process upon the Superintendent if, as to the specific contract of insurance which is the subject of the litigation, there are sufficient minimum contacts with New York State so as to support New York's long-arm jurisdiction under N.Y. Insurance Law § 1213(b)(1) (McKinney 2000). If the exception from § 1213 that is contained in subsection (e) is applicable, meaning that the contract of marine insurance was effectuated either in accordance with N.Y. Ins. Law § 2117(b) or § 2105 and the contract of insurance designates the Superintendent to accept service of process as the insurer's attorney upon whom may be served all lawful process in any proceeding brought by or on behalf of an insured or beneficiary arising out of such contract, the insurer has thereby voluntarily submitted itself to New York jurisdiction under the contract of insurance.

**Facts:**

No facts were presented.

**Analysis:**

The inquirer posed his question to include the phrase, "placed marine insurance in New York," but did not provide us with any of the facts surrounding any specific placement of which he inquired. Therefore, we are unable to provide the inquirer with an answer as to a particular contract of insurance. However, we will in this letter discuss the applicable law.

Where a resident of New York State is insured under a contract of insurance issued by an unauthorized alien insurer the question may arise whether such insurer is subject to the jurisdiction of the courts in New York.

Section 1213 of the New York Insurance Law is a special "long-arm jurisdiction" statute[1] pursuant to which if specified contacts with New York State by an unauthorized alien or foreign insurer exist, as enumerated in subsection (b)(1), there is New York jurisdiction. Such jurisdiction is obtained through service of process upon the unauthorized foreign or alien insurer by serving the process upon the Superintendent of Insurance. Section 1213 (b)(1) provides, as follows:

(b)(1) Any of the following acts in this state, effected by mail or otherwise, by an unauthorized foreign or alien insurer:

(A) the issuance or delivery of contracts of insurance to residents of this state or to corporations authorized to do business therein,

(B) the solicitation of applications for such contracts,

(C) the collection of premiums, membership fees, assessments or other considerations for such contracts, or

(D) any other transaction of business.

is equivalent to and constitutes its appointment of the superintendent, and his successors in office, to be its true and lawful attorney upon whom may be served all lawful process in any proceeding instituted by or on behalf of an insured or beneficiary arising out of any such contract of insurance, and shall signify its agreement that such service of process is of the same legal force and valid as personal service of process in this state upon such insurer.

The statute only confers New York jurisdiction where the unauthorized insurer is actually doing business in New York State. See *Arkwright Mut. Ins. Co. v. Scottsdale Ins.Co.* 874 F. Supp. 601(S.D.N.Y. 1995).

Subsection (e) of § 1213 (McKinney 2000) provides for an exception to the statute with regard to unauthorized foreign or alien insurers who write marine insurance through a licensed broker under § 2117 or an excess line broker under § 2105. Subsection (e) provides, as follows:

(e) This section shall not apply to any proceeding against any unauthorized foreign or alien insurer arising out of any contract of insurance effectuated in accordance with subsection (b) or (c) of section two thousand one hundred seventeen of this chapter or in accordance with section two thousand one hundred five of this chapter where such contract designates the superintendent

> or his successors in office the insurer's true and lawful attorney upon whom may be served all lawful process in any proceeding instituted by or on behalf of an insured or beneficiary arising out of such contract.

Thus, under subsection (e), the statute, including its special long-arm jurisdiction provision which is contained in subsection (b)(1), is not applicable either to: (1) any contract of insurance effectuated in accordance with a placement by a licensed New York insurance broker of a contract of marine insurance of the kind specified in § 2117(b)(3), or (2) any contract of marine and inland marine insurance effectuated in accordance with N.Y. Ins. Law § 2105 (McKinney Supp. 2004) as an excess line placement by a New York licensed excess line broker, and where the contract designates the Superintendent as the agent for service of process for actions arising out of said contract.

Only in the circumstances described in N.Y. Ins. Law § 2117(b)(3) (McKinney Supp. 2004) may the kinds of marine insurance that are specified in subparagraphs (A) and (B) thereof be negotiated by a licensed insurance broker. Paragraph (3) provides, as follows:

> (3) marine insurance of the following kind or kinds, where it is reasonable so to do with due regard to the interests of all concerned and whether or not, at the time of such negotiation, the subject matter of such insurance is within or without this state:

> (A) insurance against perils of navigation, transit or transportation upon hulls, freights or disbursements, or other shipowner interests, goods, wares, merchandise and all other personal property and interests therein, in course of exportation from or importation into any country, or transportation coastwise, including transportation by land or water from point of origin to final destination and including war risks and marine builders' risks; and

> (B) insurance in connection with ocean going vessels against any of the risks specified in paragraph twenty-one of subsection (a) of section one thousand one hundred thirteen of this chapter.

The kind of marine insurance that may be written under N.Y. Ins. Law § 2105 in the excess line market is the kind described in N.Y. Ins. Law § 1113(a)(20) as "Marine and inland marine insurance." Not included thereunder is "Marine protection and indemnity insurance " written under paragraph (21) of the statute.

If the subsection (e) exception contained in 1213 is applicable, meaning that the insurance contract in question contains a provision designating the Superintendent as its true and lawful attorney who may accept service of process in a proceeding arising out of said contract on its behalf, the insurer has thereby voluntarily submitted itself to the jurisdiction of New York courts. The Superintendent, under such circumstance, may accept service of process against the unauthorized insurer which is served upon him and thereby New York jurisdiction would be invoked pursuant to the contract.

The inquirer cited the case of *Armada Supply Inc. v. Philip Gaybell Wright, et al.,* 858 F.2d 842 (2d Cir. 1988) in which the Second Circuit Court of Appeals allowed a lawsuit to proceed against an unauthorized alien insurer who issued a policy of marine insurance outside of the United States covering the interests of a New York business. The inquirer observed that the Court therein did not address subsection (e) of § 1213 in making its decision. The inquirer is apparently under the impression that the case should have been dismissed because of the exception contained in subsection (e).

The *Armada* case arose out of a claim made under an open cargo marine insurance policy covering a shipment of oil that was being sent from Brazil to New York. The policy itself was obtained through a Houston, Texas insurance broker who dealt with a London broker. However, the policy covered the interest of Armada Supply Inc. which was a New York corporation. The Second Circuit Court of Appeals found that there were sufficient contacts with New York under N.Y. Ins. Law § 1213(b)(1) to support New York jurisdiction for the legal proceeding against the unauthorized alien insurer. We surmise that the Court in the *Armada* case did not mention Subsection (e) of the statute because the policy does not appear to have been a policy procured under either § 2105 or 2117 of the N.Y. Ins. Law. Therefore, the exception was not applicable.

We also note that in shepardizing the *Armada* decision, although never overturned, it has received negative treatment from some courts that were subsequently faced with similar issues. The inquirer was directed to review the subsequent appellate history of the case and the citing decisions, and determine how the inquirer's specific situation fits into the current judicial reasoning.

For further information you may contact Associate Attorney Barbara Kluger at the New York City Office.

---

1 New York Insurance Law, Wolcott B. Dunham, Jr., General Editor, Matthew Bender & Co., Inc. (2003), Vol. 1, §7.09.