279-08/MEU
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
CAROLINA SHIPPING LTD.,

                              Plaintiff,                         08 CIV 4711 (BSJ)

      - against -

RENAISSANCE INSURANCE GROUP LTD.,

                              Defendant.
------------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO VACATE ATTACHMENT

                                            FREEHILL HOGAN & MAHAR, LLP
                                            Attorneys for Defendant
                                            RENAISSANCE INSURANCE GROUP LTD.
                                            80 Pine Street
                                            New York, NY 10005
                                            (212) 425-1900
                                            (212) 425-1901 fax

Of Counsel:
Michael E. Unger (MU 0045)

NYDOCS1/305610.1

# TABLE OF CONTENTS

| | |
|---|---:|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| PROCEDURAL HISTORY | 2 |
| ARGUMENT | 3 |
| POINT I | |
| IT IS CSL'S BURDEN TO DEMONSTRATE WHY THE ATTACHMENT SHOULD BE MAINTAINED | 3 |
| POINT II | |
| RENAISSANCE WAS "FOUND" WITHIN THE DISTRICT AT THE TIME THE ATTACHMENT APPLICATION WAS FILED | 4 |
| A. Personal Jurisdiction Exists Over RENAISSANCE Because RENAISSANCE is Registered to Do Business in New York | 6 |
| CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Cases**

Aaron v. Agwilines, Inc., 75 F. Supp. 604 (S.D.N.Y. 1948) .......................................................... 11

Advance Realty Associates v. Krupp, 636 F. Supp. 316 (S.D.N.Y. 1986) ................................... 11

Amalgamet, Inc. v. LeDoux & Co., 645 F. Supp. 248 (S.D.N.Y. 1986) ....................................... 11

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434 (2d Cir. 2006) .................. 3, 4

Augsbury Corporation v. Petrokey Corporation, 97 A.D.2d 173, 470 N.Y.S.2d 787

    (3d Dept. 1983) ......................................................................................................................... 11

Bay Casino, LLC v. M/V ROYAL EMPRESS, 20 F.Supp.2d 440 (S.D.N.Y. 1998) ..................... 7

Cannon v. Newmar Corp., 210 F.Supp.2d 461, 463 (S.D.N.Y. 2002) ............................................ 6

Centauri Shipping Ltd. v. Western Bulk Carriers KS, 07-CV-4761 (RJS) (Oral Decision

    Sept. 7, 2007) *aff'd*, 528 F.Supp.2d 186 (S.D.N.Y. 2007) ................................................ 8, 9, 10

Chilean Line, Inc. v. United States, 344 F.2d 757 (2d Cir. 1965) ................................................... 5

Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmbH & Co. KG, 409 F.Supp.2d 427

    (S.D.N.Y. 2006) ....................................................................................................................... 2, 9

Express Sea Transport Corp v. Novel Commodities S.A., No. 06-CV-2404 (GEL)

    (Oral Decision May 4, 2006) ............................................................................................ 7, 9, 10

Iyalla v. TRT Holdings, Inc., 2005 U.S. Dist. LEXIS 14913 (S.D.N.Y. July 25, 2005) ............. 6, 7

J.K. Int'l Pty. Ltd. v. Agriko S.A.S., 2007 U.S. Dist. LEXIS 10074, (S.D.N.Y.

    Feb. 12, 2007) ............................................................................................................................. 4

La Banca v. Ostermunchner, 664 F.2d 65 (11th Cir. 1981) ............................................................ 5

Laumann Manufacturing Corporation v. Castings USA, Inc., 913 F. Supp. 712

    (E.D.N.Y., 1996) ....................................................................................................................... 12

LeVine v. Isoserve, Inc., 70 Misc.2d 747, 334 N.Y.S.2d 796 (Sup.Ct.Albany Co. 1972) ........... 12

Maritrans Operating Partners Ltd. Partnership v. M/V BALSA 37, 64 F.3d 150,

   (4th Cir. 1995) ................................................................................................................ 5, 10

Nea Armonia Shipping Co. v. Antco Shipping Co., 409 F. Supp. 967 (M.D.Fl. 1976) ............... 11

Robfogel Mill-Andrews Corporation v. Cupples Mfrs. Co., 67 Misc.2d. 623, 323 N.Y.S.2d 381

   (N.Y. Sup. Ct. 1971) ............................................................................................................. 11

Rockefeller Univ. v. Ligand Pharms. Inc., 2008 U.S. Dist. LEXIS 40528

   (S.D.N.Y. May 19, 2008) ........................................................................................................ 9

Seawind Compania, S.A. v. Crescent Line, Inc., 320 F.2d 580 (2d Cir. 1963) ............................. 5

Speed v. Pelican Resort N.V., 1992 U.S. Dist. LEXIS 8278 (S.D.N.Y. June 2, 1992) ................ 11

Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870

   (S.D.N.Y. 2006) ...................................................................................................................... 9

VTT Vulcan Petroleum v. Langham Hill Petroleum, 684 F. Supp. 389 (S.D.N.Y. 1988) ............. 7

Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263 (2d Cir. 2002) ............................................. 4, 5

**Other Authorities**

New York BCL §304 ....................................................................................................................... 8

Robert M. Jarvis, An Introduction to Maritime Attachment Practice Under Rule B,

   20 J.Mar.L. & Comm., No. 4, 521 (Oct. 1989) ...................................................................... 5

Weinstein, Korn, Miller & Chase, CPLR Manual Vol. 1, §3.04[b] (2007) .................................... 6

## **PRELIMINARY STATEMENT**

Defendant RENAISSANCE INSURANCE GROUP LTD. (hereinafter "RENAISSANCE"), by and through undersigned counsel Freehill, Hogan & Mahar, LLP, respectfully submits this Memorandum of Law, together with the Affirmation of Michael E. Unger, in support of its motion filed pursuant to Supplemental Rule E(4)(f) of the Federal Rules of Civil Procedure for an Order vacating the May 20, 2008 ex *parte* Order authorizing issuance of the Process of Maritime Attachment and Garnishment ("PMAG") improperly obtained by Plaintiff CAROLINE SHIPPING LTD., (hereinafter "CSL") pursuant to Supplemental Rule B and for dismissal of the Verified Complaint.

At the time CSL applied for the attachment pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure it knew, or should have known, that RENAISSANCE was, in fact, "found" within the Southern District of New York because it was registered with the New York Department of State, Division of Corporations to conduct business in the State of New York as a foreign business corporation and designated the undersigned law firm as its agent to accept service of process within the Southern District of New York. Accordingly, Defendant respectfully submits that the Rule B attachment should never have issued against RENAISSANCE and the Court should enter an Order vacating the attachment and directing the release of any funds which have been restrained pursuant to the attachment.

## PROCEDURAL HISTORY

On May 20, 2008, Plaintiff CSL filed this action and obtained an *ex parte* Order of Attachment pursuant to Rule B on the ground that Defendant RENAISSANCE could not be "found" within this District. Along with its application for the attachment, CSL was required under Rule B and the Local Admiralty Rules to submit the Affidavit of its counsel detailing the efforts made to locate RENAISSANCE within the Southern District of New York and attesting that the defendant cannot be found within the District prior to filing the application.[1] The Affidavit of Plaintiff's counsel (annexed as Exhibit B to the Unger Affirmation) affirmatively admits at paragraphs 3 through 6 that Defendant RENAISSANCE has been registered to do business in New York and has had an appointed agent to accept service of process in the District since November 2007. Nonetheless, Plaintiff's counsel contends that the act of registration with the Division of Corporations is insufficient for Defendant to be "found" within the District and cites to Magistrate Judge Gorenstein's decision in Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmbH & Co., 409 F.Supp.2d 427 (S.D.N.Y. 2006). (Erne has been expressly criticized and recently rejected by Judges Lynch and Sullivan.) Based upon this faulty premise, the Court issued the *ex parte* Order on May, 20, 2008 authorizing the attachment of $1,384,845 of RENAISSANCE's property.

---

[1] RENAISSANCE first became aware of the attachment on or about May 22, 2008. On May 22, 2008, undersigned counsel informed CSL's counsel that RENAISSANCE was "found" within the District and forwarded the listing of RENAISSANCE on the Department of State, Division of Corporations website (annexed as Exhibit A to the Unger Affirmation) which evidenced that RENAISSANCE had been registered to do business in New York and had an agent appointed to accept service of process in the District since November 2007. While CSL's counsel acknowledged receipt of this information and indicated she would revert after consulting with CSL, CSL's counsel has made no further attempt to contact the undersigned. The Affidavit of CSL's counsel was not electronically filed until May 28, 2008, after RENAISSANCE had informed CSL of its presence in the District and the undersigned's status as the designated agent for receipt of service of process. While the Affidavit is dated May 20, 2008, it has not been notarized. (*See* Unger Affirmation at ¶¶ 5-7)

For the reasons set forth below, the attachment should be vacated and the Verified Complaint dismissed.

# ARGUMENT

### Point I

### IT IS CSL'S BURDEN TO DEMONSTRATE
### WHY THE ATTACHMENT SHOULD BE MAINTAINED

A Rule B maritime attachment will not issue unless the plaintiff can establish four basic prerequisites: (1) the plaintiff has an *in personam* maritime claim against the defendant within the court's admiralty jurisdiction; (2) the defendant cannot be "found within the district" where the action is commenced; (3) property belonging to the defendant is present or soon will be present within the district; and (4) there is no statutory or general maritime law proscription of the attachment. Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434, 445 (2d Cir. 2006). Rule B(1)(b) provides for initial judicial review at the time that a plaintiff applies for Rule B relief. Such review is typically conducted *ex parte*. The Rule provides that "[t]he court must review the complaint and affidavit and, if the conditions of this Rule B ***appear to exist***, enter an order so stating and authorizing process of attachment and garnishment". (emphasis added).

Nonetheless, Rule E(4)(f) requires CSL to defend the attachment if challenged, placing the burden of proof on CSL to demonstrate why the attachment should not be vacated:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which ***the plaintiff shall be required to show why the arrest or attachment should not be vacated*** or other relief granted consistent with these rules.

(emphasis added). Interpretations of Rule E(4)(f) are unanimous in holding that the burden of sustaining an attachment rests squarely with the plaintiff. Aqua Stoli, 460 F.2d 434; J.K. Int'l Pty. Ltd. v. Agriko S.A.S., 2007 U.S. Dist. LEXIS 10074, at *6-7 (S.D.N.Y. Feb. 12, 2007).

RENAISSANCE here challenges the attachment on the ground that it was, in fact, "found" within the district at the time the attachment order was issued. The burden is therefore on CSL to demonstrate that RENAISSANCE could not be "found" within the District. If CSL cannot sustain its burden, then the Court must find that RENAISSANCE was "found", must vacate the attachment, and must order the release of any funds that have been restrained as a result of the attachment.

For the reasons outlined below, Plaintiff CSL will be unable to sustain its burden of proving that all technical requirements of Rule B have been met as Defendant RENAISSANCE was "found" within the District at the time of the attachment application was filed. Accordingly, the attachment should be vacated.

## Point II

## RENAISSANCE WAS "FOUND" WITHIN THE DISTRICT AT THE TIME THE ATTACHMENT APPLICATION WAS FILED

It is axiomatic that an attachment under Rule B is available only against defendants who are not "found" within the District where the attachment is sought. Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263, 268 (2d Cir. 2002). Rule B provides, in pertinent part, as follows:

> (1) **When Available; Complaint, Affidavit, Judicial Authorization, and Process.** In an *in personam* action:
>
> (a) If a defendant is not found within the district, a verified complaint may contain a prayer for process to attach the

> defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.
>
> **(b)** The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment....

The Rule itself does not explain what "found" means, but the Courts, in interpreting this term, have uniformly resolved that a defendant is "found" for the purposes of Rule B when "the defendant has sufficient contacts with the district to meet minimum due process standards and can be served with process in the district." Winter Storm, 310 F.3d at 268, *citing* Robert M. Jarvis, An Introduction to Maritime Attachment Practice Under Rule B, 20 J.Mar.L. & Comm., No. 4, 521 (Oct. 1989); Chilean Line, Inc. v. United States, 344 F.2d 757 (2d Cir. 1965). In this regard, federal case law has developed a two-part test for determining whether a defendant can be "found" for the purposes of Rule B: "First, can the defendant be found within the district in terms of jurisdiction (minimum contacts), and second, can the defendant be found within the district for service of process. If the answer to both is yes, the defendant can be found within the district and attachment is not proper." Maritrans Operating Partners Ltd. Partnership v. M/V BALSA 37, 64 F.3d 150, 154 n.9 (4th Cir. 1995), *citing inter alia* Seawind Compania, S.A. v. Crescent Line, Inc., 320 F.2d 580, 582 (2d Cir. 1963) and La Banca v. Ostermunchner, 664 F.2d 65, 67 (11th Cir. 1981).

Here, there can be no doubt that, at all times relevant to the attachment application, RENAISSANCE had an agent for receipt of service of process in the District as identified on the Department of State website listing for RENAISSANCE, a copy of which is annexed to the Unger Affirmation as Exhibit A.

Therefore the only issue before the Court on this motion is whether RENAISSANCE was subject to the *in personam* jurisdiction of this Court at the time the attachment application was filed. The answer to this question is "yes". Accordingly, the attachment must be vacated as improper and any funds restrained as a result of the attachment must be immediately released.

**A.    Personal Jurisdiction Exists Over RENAISSANCE Because RENAISSANCE is Registered to Do Business in New York**

Under New York law, it is well-established that any corporation which is registered to do business in the state is subject to the *in personam* jurisdiction of the courts *anywhere* within the state. Iyalla v. TRT Holdings, Inc., 2005 U.S. Dist. LEXIS 14913 (S.D.N.Y. July 25, 2005), *citing* Cannon v. Newmar Corp., 210 F.Supp.2d 461, 463 n.2 (S.D.N.Y. 2002) (noting that under C.P.L.R. §301, New York courts have jurisdiction over any corporation registered to do business within the state). The New York Department of State's Counsel's Office Legal Memorandum CO01 (annexed as Exhibit E to the Unger Affirmation) makes clear that the "effect of an application for authority is two-fold: the organization acknowledges that it considers itself to be doing business in the state, and it facilitates legal and administrative proceedings by specifying in the application for authority where and in what manner the organization may be served with process." This view is in accord with the noted treatise Weinstein, Korn, Miller & Chase, CPLR Manual which notes that a foreign corporation which files a certificate of authority to do business in New York is also deemed to have consented to the personal jurisdiction of the courts throughout the state, even if it is not otherwise subject to *in personam* jurisdiction in New York. Vol. 1, §3.04[b] (2007).

In the two most recent cases to have addressed the issue of whether prior registration with the Division of Corporations makes a putative defendant "found" within the District for purposes

of Rule B, Judges Lynch and Sullivan both concluded that the registration *was* sufficient to establish the defendants were "found" and each vacated the respective order of attachment.

In Express Sea Transport Corp v. Novel Commodities S.A., No. 06-CV-2404 (GEL) (Tr. of Oral Decision issued May 4, 2006) (annexed as Exhibit C to the Unger Affirmation), Judge Lynch vacated an attachment entered against a foreign corporation which had registered to do business with the Secretary of State. In so holding, Judge Lynch rejected the Plaintiff's argument, based upon the holdings in Bay Casino, LLC v. M/V ROYAL EMPRESS, 20 F.Supp.2d 440, 451 (S.D.N.Y. 1998) and VTT Vulcan Petroleum v. Langham Hill Petroleum, 684 F. Supp. 389 (S.D.N.Y. 1988), that a defendant may only be found within the district if it engages in substantial commercial activity within the district. The Court concluded that this contention had been rejected by the Second Circuit in Seawind. Judge Lynch correctly interpreted the jurisdiction prong of the inquiry to require only that the defendant be amenable to suit. (Unger Affirmation as Exhibit C, p. 8-9) The "key issue is whether the defendant is amenable to suit for whatever reason and not the extent of his physical or commercial presence within the district." Judge Lynch went on to state that, "indeed, to the extent that Rule B attachments are designed at least in part to secure jurisdiction in situations where because the lack of presence of the defendant within the jurisdiction *in personam* jurisdiction cannot be obtained, it certainly seems to make sense to interpret the inquiry in just that way." (Unger Affirmation, Exhibit C, p.7)

In so holding, Judge Lynch found it significant that under New York law a corporation which registers to do business within the State consents to general jurisdiction in all the courts of the State. (Unger Affirmation, Exhibit C, p.7, *citing* Iyalla, 2005 U.S. Dist. LEXIS 14913.) Judge Lynch was also influenced by the fact that the defendant had specifically consented to the

*in personam* jurisdiction of the New York Courts and agreed to adhere to an order issued by the Court to compel arbitration in London.[2]

Subsequently, in <u>Centauri Shipping Ltd. v. Western Bulk Carriers KS</u>, 07-CV-4761 (RJS) (Tr. of Oral Decision issued Sept. 7, 2007), (annexed as Exhibit D to the Unger Affirmation) (*aff'd*, 528 F.Supp.2d 186 (S.D.N.Y. 2007), Judge Sullivan agreed with Judge Lynch's analysis and rejected plaintiff's argument that the defendants contacts "taken as a whole are insufficient to establish a jurisdictional presence in New York." <u>Id</u>. at *7. Judge Sullivan also found this argument inconsistent with the Second Circuit's opinion in <u>Seawind</u>. Like Judge Lynch in <u>Express Sea Transport</u>, Judge Sullivan reiterated that:

> [t]he key inquiry relating to the jurisdictional prong of the <u>Seawind</u> test is whether the defendant is amenable to suit within the district. Although such amenability may at times be demonstrated tacitly through the existence of continuous and systematic context such as those described by plaintiff, such contacts are by no means the only method of demonstrating a defendant's jurisdictional presence in the district. In fact, the language in context of <u>Seawind</u> suggests that inquiry into the intra-district activities of the defendant is most relevant perhaps as a default in the absence of more explicit manifestations of jurisdictional acquiescence. Here, there is no dispute that the defendant is and was at all times relevant to the attachment a registered foreign corporation within the State of New York. As such defendant, under New York law, has consented to jurisdiction in the courts of this state.

(Unger Affirmation, Exhibit D, p. 7, *citing* <u>New York BCL</u>, 1304-1314). *See* <u>Centauri</u>, 528 F.Supp.2d at 191-192. The defendant in *Centauri* also consented to the jurisdiction of the Court as does RENAISSANCE in this case.

Continuing, Judge Sullivan opined:

> The suggestion that Rule B in the jurisdictional prong of <u>Seawind</u> somehow require more than this so that they would require the

---

[2] RENAISSANCE consents to the jurisdiction of the New York Courts generally and also agrees to abide by an order of this Court directing arbitration in Moscow in accordance with the terms of the contract of insurance between the parties. (Unger Affirmation, ¶ 11)

NYDOCS1/305610.1                                8

>court to ignore defendants' explicit consent to jurisdiction in this district in favor of a more cumbersome and unwieldy balancing test of intra-district commercial activity I believe flies in the face of common sense and is not required by Seawind.

(Unger Affirmation, Exhibit D, p. 8). Having determined that the defendant was both amenable to suit in the District and readily available to accept service of process in the District, Judge Sullivan concluded that the defendant had met both prongs of the Seawind test.

Plaintiff CSL alleged in its attachment application that RENAISSANCE's contacts with New York were insufficient to support a finding that RENAISSANCE was subject to this Court's personal jurisdiction, notwithstanding its registration to do business in New York. (Unger Affirmation, Exhibit B, at ¶¶4-6). To support this proposition, Plaintiff's counsel relies solely upon Magistrate Judge Gorenstein's decision in Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmbH & Co. KG, 409 F.Supp.2d 427 (S.D.N.Y. 2006), *overruled by* Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. 2006), *and abrogated by* Express Sea Transport, Centauri *and* Rockefeller Univ. v. Ligand Pharms. Inc., 2008 U.S. Dist. LEXIS 40528 (S.D.N.Y. May 19, 2008). CSL's reliance on Erne is misplaced.

In Erne, Magistrate Judge Gorenstein recognized that as a matter of New York law, registration with the Division of Corporations did confer personal jurisdiction over the defendant. Nonetheless, the Magistrate went on to consider whether, in the absence of the actual presence of the defendant within the District, at least one of the dual purposes of Rule B would be vindicated, namely: (1) the provision of security in favor of the plaintiff, and (2) the assurance of the defendant's appearance in the action. Id. at 438. Apparently concerned that the defendant had registered only a few weeks before the attachment action was filed and could "unregister" at any time, Magistrate Judge Gorenstein concluded that "actual presence" was

required as such presence would make it more likely that assets would be located within the district to provide security in favor of the plaintiff.

As Judge Lynch noted in <u>Express Sea Transport</u>, however, a requirement of "actual presence" appears to be inapposite because a Rule B attachment presupposes that there are assets in the District. Second, the fact that registration can be withdrawn after an action has been commenced, while technically true, is irrelevant because whether a defendant is present for jurisdictional purposes is measured as of the time the complaint was filed. Once a defendant is subject to the jurisdiction of the court, a court may take any measures provided by the Federal Rules of Civil Procedure necessary to secure the defendant's presence. A subsequent revocation of registration by the defendant would have no effect on any pending litigation, but future plaintiffs would then be able to utilize Rule B attachments against the defendant since it would no longer be "found" within the District. Essentially, Rule B gives potential defendants a choice: either they subject themselves to the Courts of New York or they open up the possibility that their property in the District will be attached. (Unger Affirmation, Exhibit C, p. 9-10)

The holdings in <u>Express Sea Transport</u> and <u>Centauri</u> are in no way novel. In fact, the Fourth Circuit in <u>Maritrans Operating Partners Ltd Partnership v. M/V Balsa 37</u>, 64 F.3d 150 (1995), agreed that registration with the Secretary of State is sufficient to meet the jurisdictional prong requirement for Rule B purposes.

> Because the Clerk of the State Corporation Commission is statutorily appointed under the Virginia Code to accept service of process, he is found within the district under Supplemental Admiralty Rule B as interpreted by LAR (l)(b)....Virginia Code Section 13.1-758F provides for substituted service on the Clerk of the State Corporation Commission where a foreign corporation without certificate of authority transacts business in the Commonwealth but has no director, officer or agent within the Commonwealth on which to serve process. Clearly, Maritrans had an agent authorized by law upon which to serve process under

>Rule 4(d), and thus does not fall within the LAR's definition of 'not found within the district' under Admiralty Rule B.

Maritrans, 64 F.3d at 154. *See also* Nea Armonia Shipping Co. v. Antco Shipping Co., 409 F. Supp. 967, 970 (M.D.Fl. 1976) (holding where New York corporation was qualified with the Florida Secretary of State, the defendant was subject to *in personam* jurisdiction throughout the entire state). Concededly, the Maritrans case dealt with a local admiralty rule providing a narrow definition of "not found within the district." Nevertheless, the court vacated the attachment on the ground that the defendant could be served with process within the district.

Further support for the proposition that registration confers jurisdiction over the Defendant is found in Speed v. Pelican Resort N.V., 1992 U.S. Dist. LEXIS 8278, at *2 (S.D.N.Y. June 2, 1992), Judge Kram observed:

>Both this Court and the New York State courts have consistently held that a foreign corporation which registers under BCL §304 and establishes the Secretary of State as its agent upon whom process may be served under BCL § 304, has consented to personal jurisdiction in the State of New York. Augsbury Corporation v. Petrokey Corporation, 97 A.D.2d 173, 176, 470 N.Y.S.2d 787, 789 (3d Dept. 1983) (holding that "authorization to do business in the State and concomitant designation of the Secretary of State as its agent for service of process pursuant to section 304 of the Business Corporation Law is consent to personal jurisdiction which has been found to satisfy due process"); Robfogel Mill-Andrews Corporation v. Cupples Mfrs. Co., 67 Misc.2d. 623, 323 N.Y.S.2d 381 (N.Y. Sup. Ct. 1971); Advance Realty Associates v. Krupp, 636 F. Supp. 316 (S.D.N.Y. 1986) (registration pursuant to BCL § 304 confers jurisdiction, regardless of the actual volume of business done there); Amalgamet, Inc. v. LeDoux & Co., 645 F. Supp. 248, 249 (S.D.N.Y. 1986) (*citing* Augsbury, 97 A.D.2d at 175, 470 N.Y.S.2d at 789; and Robfogel, 67 Misc.2d at 624, 323 N.Y.S.2d at 382); Aaron v. Agwilines, Inc., 75 F. Supp. 604 (S.D.N.Y. 1948). It is also established that receiving authorization to do business in New York and designating the Secretary of State as an agent for service of process is sufficient to confer jurisdiction ***regardless of whether any business is actually conducted in the State***. *See* Aaron, 75 F. Supp. at 606; Augsbury, 97 A.D.2d at 176, 470 N.Y.S.2d at 789.

(emphasis added)

The significance and legal force of the registration process cannot be overstated. In Laumann Manufacturing Corporation v. Castings USA, Inc., 913 F. Supp. 712 (E.D.N.Y., 1996), Judge Spatt found "[a] corporation that is licensed to do business in New York meets the criteria of 'doing business' for the purposes of personal jurisdiction." Similarly, in LeVine v. Isoserve, Inc., 70 Misc.2d 747, 334 N.Y.S.2d 796 (Sup.Ct.Albany Co. 1972), a foreign corporation that was still licensed approximately six years after it ceased doing business in New York remained amenable to general personal jurisdiction. The LeVine Court reasoned that in the absence of a revocation of consent by the corporation, the still extant certificate of authority on file with the New York Secretary of State conferred personal jurisdiction over the defendant.

Having been granted authority to conduct business within New York, having designated an agent to receive service of process in Manhattan and having consented to the *in personam* jurisdiction of the New York courts, it is undisputable that RENAISSANCE was "found" within the district at the time of CSL's application for the attachment. This Court should follow the better reasoned decisions by Judges Lynch and Sullivan and conclude that RENAISSANCE was "found" within the Southern District of New York prior to the application for the Rule B attachment and the grounds for granting the attachment were not satisfied *ab initio* and the attachment should be vacated.

## CONCLUSION

For all the foregoing reasons, the attachment should be vacated, Plaintiff should be precluded from continuing to serve the PMAG issued herein on potential garnishees, any funds restrained should be ordered to be released, the parties should be directed to arbitrate their

dispute in Moscow and this matter should be stayed pending the outcome of London arbitral proceedings.

Dated: New York, New York
       June 2, 2008

                            FREEHILL HOGAN & MAHAR, LLP
                            Attorneys for Defendant
                            RENAISSANCE INSURANCE GROUP LTD.

By: _____
     Michael E. Unger (MU 0045)
     80 Pine Street
     New York, NY 10005
     (212) 425-1900
     (212) 425-1901 fax

NYDOCS1/305610.1            13