279-08/MEU
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
RENAISSANCE INSURANCE GROUP LTD.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

Michael E. Unger (MU 0045)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CAROLINA SHIPPING LTD.,

                   **08 CIV 4711 (BSJ)**

          Plaintiff,

   -against-                 **UNGER AFFIRMATION**

RENAISSANCE INSURANCE GROUP LTD.,

          Defendant.
-----------------------------------------------------------x

    MICHAEL E. UNGER, an attorney at law, affirms under penalty of perjury of the laws of the United States of America as follows:

    1.    I am an attorney admitted to practice before this Honorable Court, am a member of the law firm of Freehill Hogan & Mahar, LLP and act as counsel for the Defendant herein, RENAISSANCE INSURANCE GROUP LTD. (hereinafter "RENAISSANCE") and submit this Affirmation in support of RENAISSANCE's motion to vacate the attachment of its assets pursuant to the Process of Maritime Attachment and Garnishment issued May 20, 2008.

    2.    I submit this Affirmation based on facts and information known to me personally as well as documents and information provided to me by RENAISSANCE and its representatives, all of which I believe to be true and accurate.

NYDOCS1/305647.1

3.     Plaintiff CAROLINA SHIPPING LTD. (hereinafter "CSL"), commenced this action on May 20, 2008 seeking security in the sum of $1,384,845 against RENAISSANCE for damages claimed to be based on an alleged breach of a marine insurance contract involving the M/V AP SKY.

4.     That same day, CSL sought and obtained an *ex parte* order for issuance of Process of Maritime Attachment and Garnishment ("PMAG").

5.     RENAISSANCE first became aware of the attachment on or about May 22, 2008.  On May 22, 2008, the undersigned informed CSL's counsel that RENAISSANCE was "found" within the District and forwarded the listing for RENAISSANCE from the Department of State, Division of Corporations website which evidenced that RENAISSANCE had been registered to do business in New York and had appointed the undersigned as its agent to accept service of process in the District as of November 2007. Annexed hereto as Exhibit A is the printout from the Division of Corporations' website listing, confirming RENAISSANCE was registered to do business and had appointed an agent to accept service of process.   While CSL's counsel acknowledged receipt of this information and indicated she would revert after consulting with CSL, CSL's counsel has made no further attempt to contact the undersigned.

6.     In support of CSL's application for the *ex parte* order of attachment, in compliance with Rule B and the Local Admiralty Rules, Plaintiff's counsel submitted the Affidavit annexed hereto as Exhibit B.  The Affidavit affirmatively acknowledges at paragraphs 3 through 6 that Defendant RENAISSANCE has been registered to do business

in New York and has had an agent appointed to accept service of process in the District since November 2007.

7.      The Affidavit was not electronically filed until May 28, 2008, after RENAISSANCE had informed CSL of its presence in the District and the undersigned's status as the designated agent for receipt of service of process. While the Affidavit is dated May 20, 2008, it has not been notarized.

8.      Annexed hereto as Exhibit C is a copy of the Order issued by Judge Lynch in Express Sea Transport Corp. v. Novel Commodities S.A., No. 06-CV-2404 (GEL), vacating the attachment issued in that action on the basis that the defendant was "found" in the Southern District of New York based upon its registration as a foreign company to do business in the State of New York via the Office of the Department of State, Division of Corporations. Additionally attached as part of Exhibit C is a true and correct copy of the transcript of the Oral Decision issued by Judge Lynch on May 4, 2006 which sets forth his reasoning for the vactur order.

9.      Annexed hereto as Exhibit D is a copy of the Order issued by Judge Sullivan in Centauri Shipping, Ltd v. Western Bulk Carriers KS, 07-CV-4761 (RJS), vacating the attachment in that action, also on the basis that the defendant was found within the District by reason of having registered with the Department of State, Division of Corporations. Also annexed as part of Exhibit D is a copy of the transcript of the September 7, 2007 Oral Decision of Judge Sullivan setting forth his reasons for granting the motion to vacate.

10.     Annexed hereto as Exhibit E is a copy of the New York State Department of State's Counsel's Office Legal Memorandum C001.

11.    To be clear, RENAISSANCE consents to the exercise of personal jurisdiction over it by any court in the State of New York in respect of any cause of action whether arising in New York or not and further consents to an Order issued by this Court compelling arbitration in Moscow in accordance with the contract of insurance entered between the parties.

I declare under penalty of perjury of the laws of the United States of America the foregoing is true and correct.

Dated: New York, New York
        June 2, 2008

_____
Michael E. Unger (MU 0045)

# Exhibit A

# Unger Affirmation

# NYS Department of State

## Division of Corporations

### Entity Information

Selected Entity Name: RENAISSANCE GROUP RUSSIA

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | RENAISSANCE INSURANCE GROUP LIMITED |
| **Initial DOS Filing Date:** | NOVEMBER 27, 2007 |
| **County:** | NEW YORK |
| **Jurisdiction:** | SOVIET UNION |
| **Entity Type:** | FOREIGN BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
FREEHILL HOGAN & MAHAR LLP
ATTN: MICHAEL UNGER
80 PINE STREET
NEW YORK, NEW YORK, 10005-1759

**Registered Agent**

MICHAEL E. UNGER
C/O FREEHILL HOGAN & MAHAR LLP
80 PINE STREET
NEW YORK, NEW YORK, 10005-1759

NOTE: New York State does not issue organizational identification numbers.

Search Results          New Search

Division of Corporations, State Records and UCC Home Page   NYS Department of State Home
Page

# Exhibit B

# Unger Affirmation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CAROLINA SHIPPING LTD.                          :

        Plaintiff,                              :          08 Civ. 4711
                                                                            ECF CASE
     - against -                                   :

RENAISSANCE INSURANCE GROUP LTD.,       :

        Defendant.                             :
-----------------------------------------------------------X

### AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut   )
               )   ss: SOUTHPORT
County of Fairfield     )

     Lauren C. Davies, being duly sworn, deposes and says:

     1.     I am a member of the Bar of this Court and represent the Plaintiff herein. I am familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

### DEFENDANTS ARE NOT PRESENT IN THE DISTRICT

     2.     I have attempted to locate the Defendant, RENAISSANCE INSURANCE GROUP LTD., within this District. As part of my investigation to locate the Defendant within this District, I checked the telephone company information directory, as well as the white and yellow pages for New York listed on the Internet or World Wide Web, and did not find any listing for the Defendants.

     3.     I also checked the New York State Department of Corporations' online database, which showed a listing for RENAISSANCE INSURANCE GROUP LTD. as having registered

to do business in New York on or about November 27, 2007. *See NY Department of State Division of Corporations Entity Information annexed hereto as Exhibit "1."*

4.    Despite this registration to do business and the appointment of a DOS Process server, I submit that the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

5.    According to the Second Circuit, in order for a defendant to be "found within the district," a two pronged test must be met. First, the defendant must be "found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process." *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F. 2d 580, 582 (2d Cir. 1963); *quoted in Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GMBH & Co.*, 409 F. Supp. 2d 427, 432 (S.D.N.Y. 2006).

6.    Here, the defendant can be found for service of process but not in terms of jurisdiction as mere registration to do business alone is not enough to be "found" for the purposes of Rule B. As stated by the Court in *Erne,* "neither policy underlying Rule B is vindicated by predicating jurisdiction on a mere filing for authorization to do business under the Business Corporation Law. Accordingly, we do not consider such filing to be sufficient to make a showing that a defendant is "found" within the district." *See Erne Shipping,* 409 F. Supp. 2d at 438 (overruled on other grounds); *but see Centauri Shipping Ltd. v. Western Bulk Carriers KS,* 528 F. Supp. 2d 187 (S.D.N.Y. 2007).

7.    Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within the District in the hands of ABN Amro, American Express Bank, Bank of America, Bank of New York, Citibank, Deutsche Bank, HSBC (USA) Bank, J.P. Morgan Chase, Standard Chartered Bank and/or Wachovia Bank N.A.

## PRAYER FOR ORDER ALLOWING SPECIAL PROCESS SERVER

8.     Plaintiff seeks an order pursuant to Rule 4(c) of the Federal Rules of Civil

Procedure, for an Order appointing Thomas L. Tisdale, Claurisse A. Campanale-Orozco, Lauren

C. Davies or any other partner, associate, paralegal or other agent of TISDALE LAW OFFICES,

LLC to serve the Verified Complaint, Process of Maritime Attachment and Garnishment,

Interrogatories or other process in this action, in addition to the U.S. Marshall to serve the

Process of Maritime Attachment and Garnishment and the Verified Complaint, together with any

Interrogatories, upon the garnishee(s), together with any other garnishee(s) who, based upon

information developed subsequent hereto by the Plaintiff, may hold property of, for or on

account of the Defendants.

9.     Plaintiff seeks to serve the prayed for Process of Maritime Attachment and

Garnishment with all deliberate speed so that it may be fully protected against the potential of

being unable to satisfy an award/judgment ultimately obtained and entered against the

Defendants.

10.     To the extent that this application for an Order appointing a special process server

with respect to this attachment and garnishment does not involved a restraint of physical

property, there is no need to require that the service be effected by the Marshal as it involves

simple delivery of the Process of Maritime Attachment and Garnishment to the various

garnishees to be identified in the writ.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

11.     Plaintiff also respectfully requests that the Court grant it leave to serve any

additional garnishee(s) who may, upon information and belief obtained in the course of this

litigation to be holding, or believed to be holding, property of the Defendants, within this

–3–

District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the court amended Process seeking simply to identify other garnishee(s).

### PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

12.    Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served through the next day, provided that process is served the next day, to authorize service of process via facsimile or e-mail following initial *in personam* service.

13.    This is Plaintiff's first request for this relief made to any Court.

Dated: May 20, 2008
      Southport, CT

 

Lauren C. Davies

Sworn and subscribed to before me
this 20th day of May 2008.

_____

Notary Public

-4-

# EXHIBIT 1

# NYS Department of State

## Division of Corporations

### Entity Information

Selected Entity Name: RENAISSANCE INSURANCE GROUP LIMITED

Selected Entity Status Information

**Current Entity Name:** RENAISSANCE INSURANCE GROUP LIMITED
**Initial DOS Filing Date:** NOVEMBER 27, 2007
**County:** NEW YORK
**Jurisdiction:** SOVIET UNION
**Entity Type:** FOREIGN BUSINESS CORPORATION
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
FREEHILL HOGAN & MAHAR LLP
ATTN: MICHAEL UNGER
80 PINE STREET
NEW YORK, NEW YORK, 10005-1759

**Registered Agent**
MICHAEL E. UNGER
C/O FREEHILL HOGAN & MAHAR LLP
80 PINE STREET
NEW YORK, NEW YORK, 10005-1759

NOTE: New York State does not issue organizational identification numbers.

Search Results          New Search

Division of Corporations, State Records and UCC Home Page     NYS Department of State Home Page

Exhibit C

Unger Affirmation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

EXPRESS SEA TRANSPORT CORP.,          :

                    Plaintiff,        :

        -against-                     :

NOVEL COMMODITIES S.A.,               :

                    Defendant.        :

-------------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/5/06
```

06 Civ. 2404 (GEL)

**ORDER**

GERARD E. LYNCH, District Judge:

     For the reasons stated on the record in open court on May 4, 2006, the attachment issued by this Court on March 28, 2006, is hereby vacated.

     The parties are instructed that unless reason is given before May 15, 2006, as to why this action should continue, the Court will dismiss the action.

SO ORDERED.

Dated: New York, New York
     May 4, 2006

                            GERARD E. LYNCH
                       United States District Judge

654YEXPC.txt

1

654YEXPC
1   UNITED STATES DISTRICT COURT
1   SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
2
3   EXPRESS SEA TRANSPORT CORP.,
3
4                   Plaintiff,
4
5           v.                              06 Civil 2404 (GEL)
5
6   NOVEL COMMODITIES S.A.,
6
7                   Defendant.
7
8   ------------------------------x
8
9                                       May 4, 2006
9                                       3:15 p.m.
10
10
11  Before:
11
12          HON. GERARD E. LYNCH,
12
13                                       District Judge
13
14
14
15                      APPEARANCES
15
16
16  FREEHILL, HOGAN & MAHAR, LLP
17  Attorneys for Plaintiff
17      80 Pine Street
18      New York, New York
18  MICHAEL E. UNGER, ESQ.,
19      of counsel
19
20
20  FOWLER, RODRIGUEZ & CHALOS, LLP
21  Attorneys  for Defendant
21      336 Main Street
22      Port Washington, New York
22  OWEN F. DUFFY, ESQ.,
23  BRIAN T. MCCARTHY, ESQ.,
23      of counsel
24
24
25
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

⊔                                                                        2

    654YEXPC
1           THE CLERK:  In the matter of Express Sea Transport
2   Corporation against Novel Commodities.
3           Counsel, please identify yourselves for the record,
4   beginning with plaintiff.
5           MR. UNGER:  Michael Unger, Freehill, Hogan & Mahar for
6   Express Sea Transport.
7           MR. DUFFY:  Owen Duffy for the defendant Novel
8   Commodities, with my colleagues Brian McCarthy.
                          Page 1

654YEXPC.txt
```
 9            THE COURT:  Good afternoon, counsel.
10            This case is before the court on the defendant's
11    motion to vacate an order of maritime attachment that was
12    entered on March 29, 2006.  The parties appeared for a hearing
13    on May 2 and I promised to decide the matter by this afternoon.
14            After considering the arguments presented at the
15    hearing and contained in the parties' papers and the subsequent
16    submissions made by both sides, the court will now grant the
17    defendant's motion and vacate the attachment.
18            Under Rule B of the Supplemental Rules of Certain
19    Admiralty and Maritime Claim, a plaintiff may attach a
20    defendant's property within the district if the plaintiff's
21    claim is a maritime action and if the defendant is not found
22    within the district.  The defendant has challenged the validity
23    of plaintiff's attachment and, therefore, plaintiff has the
24    burden to show that the attachment was proper.  In this case
25    the dispute regarding the propriety of the attachment centers
```
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    3
654YEXPC
```
 1    on whether the defendant, Novel, can be found within the
 2    district for the purposes of Rule B.
 3            A defendant is found within the district if it is
 4    both, one, found within the district for purposes of
 5    jurisdiction and, two, found within the district for purposes
 6    of service of process.  That is Seawind Compania, S.A., versus
 7    Crescent Line Incorporated, 320 F.2d 580 at 582, (2d Cir.
 8    1963).
 9            The plaintiff argues that under this test the
10    defendant was not found in the district because plaintiff
11    engaged in a diligent search for the defendant and didn't find
12    him.  This argument is without merit for two reasons:
13            First, plaintiff's reliance on the diligence of its
14    search is misplaced.  There is case law supporting the
15    proposition that a diligent search that fails to undercover
16    defendant's agent for service of process is sufficient to
17    satisfy the service prong inquiry even if the defendant does,
18    in fact, have an agent for process within the district.  See,
19    for example, West of England Ship Owners Mutual Insurance
20    Association versus MacAllister Brothers Incorporated, 829 F.
21    Supp. 122 at 123 to 24, Eastern District of Pennsylvania, 1993.
22            The applicability of this rule to the service prong
23    makes some degree of sense.  A defendant should not be able to
24    avoid suit by hiding an agent away from potential plaintiffs
25    thereby forcing the plaintiff to attach property before the
```
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    4
654YEXPC
```
 1    defendant comes forward to reveal the hidden agent.  In such a
 2    situation a determination that a defendant is not found within
 3    the district for service of process despite the fact that there
 4    was an agent within the district serves as a sort of penalty
 5    rule to discourage any hidden agent tactics.
 6            Plaintiff has pointed to no case, however, that
 7    applies this doctrine to the jurisdiction prong of the inquiry,
 8    and the rational that underpins the doctrine on the service
 9    issue does not extend to the jurisdiction issue.
10            Second, regardless of the applicability of plaintiff's
11    argument regarding what was knowable at the time of the search,
12    the record reveals that plaintiff did, in fact, know all the
13    relevant facts.  Plaintiff did find by going to the office of
```
                                Page 2

654YEXPC.txt
14  the New York Secretary of State that defendant had a registered
15  agent for service of process within the district.  In fact, in
16  arguing that its search was diligent, plaintiff asserts that
17  the search "revealed the very items which defendant now asserts
18  constituted its presence."  Plaintiff's memorandum at pages 2
19  to 3.
20          The issue for the court, therefore, is not the
21  diligence of plaintiff's search, but, rather, whether the facts
22  uncovered by that search, the same facts asserted by the
23  defendant, lead to the conclusion that the defendant can be
24  found within this district.
25          As previously mentioned, the determination of whether
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    5

654YEXPC
1   a defendant is found within the district for purposes of Rule B
2   is governed by the two-prong Seawind test.
3           Taking the second prong of the test first, it is clear
4   that defendant is found in the district for service of process
5   purposes.  Plaintiff admits that the defendant has designated
6   an agent for service of process with the New York Secretary of
7   State.
8           Plaintiff argues, however, that defendant nevertheless
9   may not be found within the district for purposes of service of
10  process because when plaintiff's attorney called the offices of
11  defendant's agent, the person who answered the phone was unable
12  to confirm that the agent was authorized to accept service on
13  behalf of defendant.  Plaintiff provides no information with
14  regard to who this person on the phone was or whether he or she
15  is expected to know anything about defendant's agreement with
16  the agent to accept service on defendant's behalf.  Plaintiff
17  did not attempt to follow up on the phone call nor did it
18  attempt to serve defendant via the agent.  One inconclusive
19  phone call is insufficient to carry plaintiff's burden of
20  showing that the defendant is not found in the district for
21  purposes of service, especially in light of the parties'
22  agreement that the defendant does, in fact, have a registered
23  agent on file with the Secretary of State and the fact that
24  plaintiff actually and without difficulty discovered that fact
25  and defendant's averment that the agent is, in fact, authorized
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    6

654YEXPC
1   to accept service.
2           Turning now to the first jurisdictional prong of the
3   inquiry, the court also finds that defendant can be found
4   within this district for purposes of jurisdiction.  To satisfy
5   this test, a defendant must "be engaged in sufficient activity
6   in the district to subject it to jurisdiction even in the
7   absence of a resident agent expressly authorized to accept
8   process."  Seawind, 320 F.2d at 383.
9           Plaintiff argues that a defendant may only be found
10  within the district if it engages in substantial commercial
11  activity within the district.  Essentially, the plaintiff's
12  view is that whether defendant is subject to suit in the
13  district is irrelevant and that what matters is the sum of
14  defendant's activities in the district regardless of the
15  connection between those activities and any requirements of
16  personal jurisdiction.
17          However, our Court of Appeals rejected that rule in
18  Seawind by stating the jurisdiction prong can be met by a
                                Page 3

654YEXPC.txt
19    showing of specific personal jurisdiction arising from the
20    particular claims there at issue even if the defendant's
21    broader activities were insufficient to establish general
22    jurisdiction.
23             Accordingly, this court interprets the jurisdiction
24    prong of the inquiry to require only that the courts of this
25    district have personal jurisdiction over the defendant whatever

7

654YEXPC
1     the basis of that jurisdiction may be.  And, indeed, to the
2     extent that Rule B attachments are designed at least in part to
3     secure jurisdiction in situations where because of the lack of
4     presence of the defendant within the jurisdiction in personam
5     jurisdiction cannot be obtained, it certainly seems to make
6     sense to interpret the inquiry in just that way.
7              In this case the defendant is subject to suit in the
8     courts of this district and, therefore, may be found here for
9     purposes of jurisdiction.  This is so for two reasons:
10             First, the defendant has stated on the record that it
11    would submit to an order issued by this court to compel
12    resolution of the underlying dispute in arbitration in London
13    as required by the charter party, thus, defendant has
14    specifically consented to the jurisdiction of this court.
15             Second, defendant is a registered foreign corporation
16    within the State of New York and under New York law a
17    corporation that registers to do business within the state
18    consents to general jurisdiction in the courts of the state.
19    See Iyalla versus TRT Holdings Incorporated, 2005 Westlaw
20    1765707 at page star 3, (S.D.N.Y. July 25, 2005).  Accordingly,
21    defendant is subject to suit in the courts of this district
22    and, therefore, defendant may be found within the district for
23    purposes of jurisdiction.
24             The cases relied upon by plaintiff do not compel a
25    contrary conclusion.  First and foremost, plaintiff cites only

8

654YEXPC
1     to opinions of district courts and magistrate judges and so to
2     the extent that those jurisdictions are contrary to governing
3     Second Circuit authority, this court must follow its own best
4     understanding of circuit case law in preference to that of
5     courts of parallel authority.
6              Second, the cases cited do not support plaintiff's
7     contention that only substantial commercial activity makes a
8     court finding that a defendant is found within the district for
9     purposes of jurisdiction.  To the contrary, the cases cited by
10    plaintiff support the conclusion that the relevant issue is
11    amenability to suit.
12             For example, in Federazione, a case relied on heavily
13    by plaintiff, the district court inquired into defendant's
14    business activity within the district, but only insofar as that
15    activity related to the question of whether it was "unfair or
16    unreasonable to require defendant to respond to suit in this
17    forum."  Federazione Italiana versus Mandask Compania De
18    Vapores, S.A., 158 F. Supp. 107 at 109, S.D.N.Y. 1957).
19             Similarly, in Bay Casino, the district court listed
20    substantial commercial activity as just one of many ways in
21    which a defendant could be found within the district for
22    purposes of jurisdiction, along with, for example, breaching a
23    contract within the district or signing a forum selection
Page 4

654YEXPC.txt

24  clause.  Bay Casino, LLC versus M/V Royal Empress, 20 F. Supp.
25  2d 440 at 451, (S.D.N.Y 1998).  If signing a forum selection
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

654YEXPC

1  clause is sufficient to render a defendant present within the
2  jurisdiction, it must follow that the key issue is whether the
3  defendant is amenable to suit for whatever reason and not the
4  extent of his physical or commercial presence within the
5  district.
6        The only case cited by plaintiff that appears to adopt
7  its substantial activity interpretation of the jurisdiction
8  test is Erne Shipping Incorporated versus HBC Hamburg Bulk
9  Carriers GMbH & Co., 409 F. Supp. 2d 427, (S.D.N.Y 2006).
10       Aside from the fact that Erne appears to this court to
11  be in conflict with Seawind, this court does not find the
12  reasoning of Erne persuasive.  The magistrate judge in Erne
13  concluded that the defendant's registration to do business in
14  New York and the accompanying consent to general jurisdiction
15  was insufficient to amount to being found in the district for
16  purposes of jurisdiction.  The court's conclusion was based on
17  an analysis of the purposes of maritime attachment, which it
18  concluded require actual presence based on actual activity
19  within the district.
20       First, the court concluded that actual presence would
21  make it more likely that assets would be found within the
22  district to provide security for plaintiff.  This appears
23  inapposite.  A Rule B attachment presupposes that there are
24  assets in the district, assets that have already been attached.
25       Second, the court concluded that registration would
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

654YEXPC

1  not guarantee defendant's presence in the district because
2  registration can be withdrawn.
3       While that observation is technically true, it is also
4  somewhat irrelevant.  Once a registered corporate defendant is
5  sued and served within the district, it is too late for the
6  defendant to revoke its registration.  The defendant is subject
7  to the jurisdiction of the court and any proceedings necessary
8  to secure the defendant's presence can be taken by the court
9  pursuant to the Federal Rules.  If not wanting to submit to the
10  power of the district court the defendant subsequently revokes
11  it's registration, that would have no effect on any pending
12  litigation, and future plaintiffs then would be able to utilize
13  Rule B attachment.  Essentially, Rule B gives potential
14  defendants a choice; either they subject themselves to the
15  courts of the district or they open up the possibility that
16  their property in the district will be attached.
17       Defendant is found and was found by the plaintiff
18  within the district for the purposes of service of process and
19  for the purposes of jurisdiction.  Therefore, defendant was
20  found within the district under Rule B and the attachment must
21  be vacated.
22       The parties devote considerable attention to an issue
23  that has divided the judges in this district, whether on a
24  motion to vacate a Rule B attachment a plaintiff must show, in
25  addition to satisfying the explicit requirements of Rule B,
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

Page 5

654YEXPC.txt

654YEXPC
1  that the attachment is fair or accords with the purposes of the
2  rule.
3         Because this court has determined that the
4  requirements, the technical requirements of Rule B are not
5  satisfied, it is not necessary to reach that issue.  The
6  requirements of Rule B have not been met and, therefore,
7  defendant's motion to vacate the attachment is granted.
8         Okay.  I think that resolves the attachment issue and
9  the question then is, is there anything else that remains of
10 this action?
11        If the action were solely for purposes of securing the
12 attachment, then I suggest that it be withdrawn.  If the
13 complaint on the other hand seeks to have the defendant submit
14 to arbitration, the defendant has already stipulated in open
15 court that it would do so and I think that probably renders the
16 action moot, but maybe the best way to do that is to enter that
17 stipulation in writing and then, in effect, dismiss the case as
18 settled on that basis, but I will leave it to the parties to
19 discuss that and see what is going to happen next.
20        I guess just to put a terminus on it, if I don't hear
21 something different from the parties within, let's say,
22 essentially ten days, by a week from Monday, then I will
23 dismiss the action as moot.
24        All right.  Anything else that we need to do today?
25        MR. DUFFY:  May, your Honor, WE issue a formal order,
             SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                              12

654YEXPC
1  because we need to present it to the garnishee.
2         THE COURT:  Yes.  We will put out the order right away
3  for reasons stated in open court on this date on the record the
4  attachment is vacated.  If you want some other form of order
5  you can submit it.
6         MR. DUFFY:  So the garnishee is satisfied.
7         THE COURT:  Right.  That ought to do it.
8         Yes.
9         MR. UNGER:  Your Honor, a couple of things.
10        There is a ten day automatic stay that applies to the
11 release of the funds by the garnishee.  I would ask that your
12 Honor keep that stay in place so that the funds remain, because
13 I believe my client is going to instruct an appeal of your
14 Honor's order.
15        THE COURT:  If it is an automatic stay, then there is
16 nothing I can do, right?
17        MR. UNGER:  It is only for ten days and after ten days
18 regardless whether we filed an appeal or not the banks would be
19 entitled to release the funds.  What I am asking is that the
20 funds remain under restrained --
21        THE COURT:  No, that is denied.  I'm confident that
22 the ruling is correct.  If you want to appeal, file your appeal
23 within ten days and ask the Court of Appeals to extend the
24 stay.  I think that is more appropriate.  Then they can decide
25 whether they think there is sufficient merit to warrant
             SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                              13

654YEXPC
1  granting a further stay.
2         MR. UNGER:  Thank you, your Honor.
3         The other item is in our papers we had asked for
4  certain discovery.  I understand your Honor has already ruled,
                    Page 6

654YEXPC.txt
5  but one of those items of discovery we had in mind to obtain
6  would be discovery as to whether or not Novel has complied with
7  the requirements of all foreign companies that register to do
8  business, and that would include filing a biannual information
9  statement and filing tax returns with the New York State
10 authorities, which I think is relevant, your Honor, to whether
11 or not the registration is actual and valid.
12        THE COURT:  No, it's not.  They are here, they got the
13 agent, they are registered, they concede they are subject to
14 jurisdiction, they are subject to jurisdiction.  There is
15 nothing further to have discovery of, point one.
16        Point two, we had an extensive argument of this two
17 days ago and nobody suggested to me that a decision on this
18 should be deferred pending some further discovery or that this
19 discovery is somehow necessary to resolve this issue.
20 Therefore, I went ahead and I resolved the issue.  It is
21 resolved, it is over and done with.
22        If there remains or is to remain some action in this
23 court on the merits, well, then you will be entitled to
24 whatever discovery you are entitled to on the merits.  It will
25 be the first occasion I am aware of where plaintiff tries to
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                              14

654YEXPC
1  take discovering to prove it doesn't have jurisdiction in the
2  action.
3        If the underlying action is going to proceed, the
4  defendant has expressly consented to jurisdiction right here in
5  open court, has -- I don't know if we actually discussed this,
6  but I think to the extent that we may be in a situation where
7  the defendant hasn't actually been served, you are waiving
8  service or accepting service or something, right?
9        MR. DUFFY:  Accepting service, your Honor.  We haven't
10 formerly filed an answer, but if it is necessary we will do so.
11        THE COURT:  So I don't think there is any issue
12 anymore as to the defendant's amenability to suit, and if there
13 is a suit to be had here, I'm not sure what that suit is since
14 both sides agree that the proper forum is London and the
15 defendant agrees to arbitrate in London.  Either you will go
16 there and do it or you will get an order compelling the
17 defendant to do it out of this court and I don't know what else
18 is left.
19        I mean, there is no claim by the plaintiff, as I
20 understand it, that this court should adjudicate the merits of
21 the dispute, there is only an issue whether the defendant has
22 to go to London and they are happy to go.
23        So I think there is nothing to have discovery about
24 and no case left, but as I say, if I misunderstand that in some
25 way you will let me know within ten days.  So while you are
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                              15

654YEXPC
1  making up your mind to appeal; you can also make up your mind
2  about that.
3        But it seems to me and I think it has been clear from
4  the beginning, and this is not any criticism, nothing improper
5  about it, that this action was about getting the attachment.
6  The attachment has now been vacated and its time for some other
7  court if you want to bring it there to decide whether that's
8  correct or not.  But at the end of the day, I think it would be
9  irresponsible for me to grant a further stay because the whole
                            Page 7

654YEXPC.txt
```
10   point of this procedure is to decide whether there is a basis
11   for attaching the defendant's property.  I have decided that
12   there isn't and so they should be entitled to the use of their
13   property as soon as possible.  That's my view of it.
14            If it is somebody's view, higher authority and greater
15   wisdom that they shouldn't be entitled to the use of their
16   property, well, it's for that court to enter a stay and protect
17   its jurisdiction and do whatever it thinks is appropriate.  But
18   for my purposes, you know, if this order is automatically
19   stayed, fine, it is automatically stayed and that gives you the
20   opportunity to seek a further stay in the appropriate court.
21            All right.  I think we are done.
22            Thank you very much.
23                                 - - -
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

# Exhibit D

# Unger Affirmation



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOC #:
DATE FILED: 9/12/07

CENTAURI SHIPPING, LTD.,

Plaintiff,

-v-

WESTERN BULK CARRIERS KS, WESTERN
BULK CARRIERS AS, and WESTERN BULK AS,

Defendant.

Case No. 07 Civ. 4761 (RJS)

ORDER

RICHARD J. SULLIVAN, District Judge:

The Court having conducted a post-attachment hearing pursuant to Supplemental

Admiralty Rule E(4)(f) on September 5, 2007 and having ruled on the record in open court on

September 7, 2007 that the Court's June 5, 2007 Ex Parte Order for Process of Maritime

Attachment and Garnishment and June 15, 2007 Order providing for the substitution of attached

funds with a surety bond be vacated on the basis that the technical requirements for issuance of

the June 5, 2007 Ex Parte Order pursuant to Supplemental Admiralty Rule B(1)(a) were not met

because the Defendant, Western Bulk Carriers K/S, was, in fact, present in the District on June 5,

2007 for purposes of Supplemental Admiralty Rule B, both jurisdictionally, by virtue of its June

22, 2005 registration with the New York Secretary of State, Department of Corporations to

conduct business in the State of New York, and readily in terms of its amenability to accept

service of process by virtue of its June 22, 2005 appointment of a designated agent for service of

process within the District,

IT IS ORDERED that the Court's June 5, 2007 Ex Parte Order for Process of Maritime

Attachment and Garnishment and June 15, 2007 Order providing for the substitution of attached

funds with a surety bond be and hereby are vacated;

IT IS FURTHER ORDERED that after the expiration of 10 days from the date this Order is entered on the Court's docket the Plaintiff shall return to the Defendant, Western Bulk Carriers K/S, the surety bond it posted on June 15, 2007;

IT IS FURTHER ORDERED that the Plaintiff shall advise the Court by September 17, 2007 if it intends to file an Amended Complaint setting forth a proper jurisdictional basis for its claims in this Court.


Dated:      September 12, 2007
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

Sep 7 hearing

1

7979CEND                    Decision
1   UNITED STATES DISTRICT COURT
1   SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
2
3   CENTAURI SHIPPING LTD.,
3
4                   Plaintiff,
4
5           v.                          07 CV 4761 (RJS)
5
6   WESTERN BULK CARRIERS KS, ET
6   AL.,
7
7                   Defendants.
8
8   ------------------------------x
9                                       New York, N.Y.
9                                       September 7, 2007
10                                      9:30 a.m.
10
11  Before:
11
12              HON. RICHARD J. SULLIVAN,
12
13                                      District Judge
13
14                      APPEARANCES
14
15  LYONS & FLOOD, L.L.P.
15          Attorneys for Plaintiff
16  BY:  KIRK M.H. LYONS
16       JON WERNER
17
17  LENNON, MURPHY & LENNON, LLC
18          Attorney for Defendants
18  BY:  PATRICK F. LENNON
19
19
20
21
22
23
24
25

            SOUTHERN DISTRICT REPORTERS, P.C.
                   (212) 805-0300

2

7979CEND                    Decision
1           (Case called)
2           THE DEPUTY CLERK:  If the parties could stated their
3   appearances for the record, please.
4           MR. LYONS:  Kirk Lyons and John Werner from Lyons &
5   Flood for plaintiff.
6           THE COURT:  Good morning.  I'm sorry.  I didn't --
7           MR. LYONS:  Jon Werner.
8           THE COURT:  Mr. Werner.
9           Good morning.
10          MR. WERNER:  Good morning.
11          MR. LENNON:  Good morning.  Patrick Lennon from
12  Lennon, Murphy & Lennon for the defendant, Western Bulk
13  Carriers KS.
                      Page 1

                          Sep 7 hearing
14              THE COURT:  Good morning, Mr. Lennon.
15         Thank you both for coming in.
16         We last met on Wednesday.  We had pretty extensive
17    argument, and I had asked basically for a couple days to
18    consider the arguments, review the cases, review the facts, and
19    to try to come up with where I came out on this thing.
20              I'm prepared to do that unless there is anything you
21    want to handle preliminarily.
22              MR. LYONS:  None from plaintiff's side, your Honor.
23              MR. LENNON:  None for defendant, your Honor.
24              THE COURT:  I had contemplated issuing a written
25    opinion but I think in the interest of speed decided to just do
                      SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                    3

      7979CEND                    Decision
1     it from the bench.  I will read portions of it.  I hope it's
2     all right.
3              I'll ready slowly.  Cites and things I can give you
4     copies of those as we go or afterwards.
5              This case is before the court on the defendants'
6     motion to vacate an order of maritime attachment that was
7     entered by Judge Karas on June 5 of 2007.  The case was
8     subsequently reassigned to me, and a hearing was conducted
9     pursuant to Supplemental Admiralty Rule E(4)(f) on September 5,
10    2007.  After considering the arguments presented at the hearing
11    as well as those set forth in the parties' extensive papers and
12    submissions, I hereby grant the defendants' motion and vacate
13    the June 5 attachment order.
14              By way of background, under Rule B of the Supplemental
15    Rules of Certain Admiralty and Maritime Claims, a plaintiff may
16    obtain an ex parte order authorizing attachment of defendants'
17    property upon the filing of a verified complaint praying for an
18    attachment and affidavit stating that to the best of
19    plaintiff's knowledge the defendant cannot be found within the
20    judicial district.  On June 5, plaintiff presented such a
21    verified complaint and affidavit to Judge Karas, who, accepting
22    the representations contained therein, issued the attachment
23    order at issue in this case.
24              Once its property had been restrained, the defendant
25    has the right under Rule E(4)(f) to appear before the district
                      SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                    4

      7979CEND                    Decision
1     court to contest that attachment; whereupon the plaintiff must
2     show why the arrest or attachment should not be vacated or
3     other relief granted.  Under the Second Circuit's ruling in
4     Aqua Stoli Shipping Limited v. Gardner Smith, the plaintiff at
5     such a hearing bears the burden of demonstrating that:  One, it
6     has a valid prima facie admiralty claim against the defendant;
7     two, defendant cannot be found within the district; three, the
8     defendants' property may be found within the district; and
9     four, there is no statutory or maritime law bar to the
10    attachment.
11              In the instant action, the defendant challenges the
12    June 5 attachment order on three grounds.  First, defendant
13    asserts that the plaintiff's verified complaint failed to state
14    a valid prima facie admiralty claim and that the claim, styled
15    as a motion to enforce a money judgment entered by the Angolan
16    Supreme Court, was unripe.  Specifically, defendant argues that
17    no such judgment had been issued by the Angolan Court and that,
18    in fact, plaintiff had failed to even commence an action that
                              Page 2

                              Sep 7 hearing
19    might result in such judgment at the time of the attachment.
20          Second, defendant asserts that plaintiff failed to
21    demonstrate the second prong of the Aqua Stoli test, namely,
22    that the defendant could not be found within the Southern
23    District of New York.
24          Finally, defendant asserts that the attachment order
25    should be vacated as a result of the court's equitable
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

5

      7979CEND                    Decision
1     discretion to vacate maritime attachments that otherwise comply
2     with Rule B.  And I'm quoting from Aqua Stoli at 444.
3           Because I find that the defendant was, in fact, found
4     within the district at the time that the attachment order was
5     issued, I grant the defendants' motion to vacate the June 5
6     order without necessarily reaching the other two bases.  The
7     reasons for my finding are as follows.
8           Although the supplemental rules do not precisely
9     define what it means to be found within the district, the
10    Second Circuit has articulated a two-prong test designed to
11    facilitate the determination of whether defendant is, in fact,
12    found within the district for purposes of Rule B.  This test,
13    first enunciated in Seawind Compania, SA v. Crescent Line,
14    Inc., provides that the defendant is found within the district
15    if:  One, he's found within the district for purposes of
16    jurisdiction; and two, he's found within the district for
17    purposes of the service of process.  In essence, the Seawind
18    test requires that the defendant be both amenable to suit in
19    the district and readily susceptible to process in the
20    district.
21          Addressing the second prong first, there appears to be
22    no dispute that at the time the attachment was sought, the
23    defendant had a valid registered agent for service of process
24    in the Southern District of New York.  Accordingly, the parties
25    appear to concede that the defendant was readily susceptible to
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

6

      7979CEND                    Decision
1     process in the district, thereby satisfying the process prong
2     of Seawind.  I cited to plaintiff's memorandum of law at 7 and
3     8 and Mr. Lyons' affidavit in support thereof at paragraph 10.
4           However, the parties dispute whether the defendant was
5     present jurisdictionally under the first prong of the Seawind
6     test.  Although plaintiff concedes that at the time of the
7     attachment it was, in fact, aware that WBC was registered to do
8     business in the State of New York, and had a registered agent
9     for the service of process -- and that's Mr. Lyons' affidavit,
10    10 -- plaintiff nevertheless insists that a defendant may only
11    be found within the jurisdiction -- found within the district
12    for jurisdictional purposes if it engages in substantial
13    commercial activity within the district.  Relying principally
14    on Magistrate Judge Gorenstein's opinion in Erne Shipping v.
15    HBC Hamburg Bulk Carriers, plaintiff asserts that general
16    jurisdiction under New York law may be found only where a
17    defendant corporation's contacts with the district are
18    continuous and systematic, requiring inquiry into "whether the
19    company has an office in the state, whether it has any bank
20    accounts or other property in the state, whether it has a phone
21    listing in the state, whether it does public relations work
22    there, and whether it has individuals permanently located in
23    the state to promote its interests."  That's plaintiff's
                              Page 3

```
                              Sep 7 hearing
24    memorandum at 9.  Applying these factors to the defendant,
25    plaintiff contends that WBC's contacts "taken as a whole are
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

```
      7979CEND                  Decision
 1    insufficient to establish a jurisdictional presence in New
 2    York" thereby defeating WBC's motion to vacate the attachment
 3    on the basis that WBC is not present in New York in the
 4    jurisdictional sense.  That's also plaintiff's memorandum at 10
 5    and 11 and 13.
 6              I reject this argument as inconsistent with the Second
 7    Circuit's opinion in Seawind.  Like Judge Lynch in Express Sea
 8    Transport Corp. v. Novel Commodities SA, 06 CV 2404, cited in
 9    the defendants' brief, I reiterate that the key inquiry
10    relating to the jurisdictional prong of the Seawind test is
11    whether the defendant is amenable to suit within the district.
12    Although such amenability may at times be demonstrated tacitly
13    through the existence of continuous and systematic contacts
14    such as those described by plaintiff, such contacts are by no
15    means the only method of demonstrating a defendant's
16    jurisdictional presence in the district.  In fact, the language
17    and context of Seawind suggests that inquiry into the
18    intra-district activities of the defendant is most relevant
19    perhaps as a default in the absence of more explicit
20    manifestations of jurisdictional acquiescence.  Here, there is
21    no dispute that the defendant is and was at all times relevant
22    to the attachment a registered foreign corporation within the
23    State of New York.  As such, defendant, under New York law, has
24    consented to jurisdiction in the courts of this state.  And I
25    cite New York Business Corporations Law 1304 through 1314.  The
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

```
      7979CEND                  Decision
 1    defendant, by the way, explicitly consented or rather conceded
 2    as much at oral argument on Wednesday.
 3              The suggestion that Rule B and the jurisdictional
 4    prong of Seawind somehow require more than this so that they
 5    would require the court to ignore defendants' explicit consent
 6    to jurisdiction in this district in favor of a more cumbersome
 7    and unwieldy balancing test of intra-district commercial
 8    activity I believe flies in the face of common sense and is not
 9    required by Seawind.
10              Having determined that defendant was both amenable to
11    suit in the district and readily available to accept service of
12    process in the district, I conclude the defendant meets both
13    prongs of the Seawind test.  Accordingly, I find the defendant
14    was, in fact, found in the district under Rule B and that the
15    June 5 attachment order must be vacated.  As a necessary
16    corollary, I also vacate Judge Karas' June 15 order in which he
17    approved the parties' stipulation to substitute a bond for the
18    attached funds.
19              Although defendants' motion also requested the
20    dismissal of the complaint in this matter, I believe that the
21    parties agreed at oral argument that there may be at least
22    potentially a basis for this action to continue even though the
23    attachment order has been vacated.  I leave that for the
24    plaintiff and plaintiff's counsel to consider, and I will grant
25    plaintiffs ten days in which to amend the complaint if they so
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

Sep 7 hearing
7979CEND                    Decision
1    choose, ten days from today.
2              Now, as was brought out during the September 5 hearing
3    and in the written submissions made in connection with this
4    motion, the verified complaints and the supporting affirmation
5    of this case contained what I consider to be serious
6    misstatements of fact that to my mind require further comment
7    and action by the court, which brings me to the second portion
8    of my ruling, and I think requires a further discussion of the
9    facts leading up to the issuance of the June 5, 2007
10   attachment.
11             On June 5, 2007, plaintiff, proceeding ex parte,
12   presented to U.S. District Judge Kenneth M. Karas, a writ of
13   maritime attachment and garnishment and verified complaint.
14             They sought to attach more than fifteen million
15   dollars of the defendants' funds.  Accompanying the attachment
16   was an affirmation by counsel, Mr. Lyons.  And in the second
17   paragraph of that affirmation, which was signed by Mr. Lyons
18   under the penalty of perjury, the affirmation read as follows:
19   "Your affiant has attempted to locate the defendants, Western
20   Bulk Carriers KS, Western Bulk Carriers AS, and Western Bulk Carriers AS
21   within the district.  As part of the investigation, my office
22   has contacted the Division of Corporations of the New York
23   Department of State and found no records indicating that
24   defendants were either incorporated or licensed to do business
25   in the State of New York."  That's at paragraph 2 of the
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    10

7979CEND                    Decision
1    affirmation.
2              Pursuant to Supplemental Admiralty Rule B(1) of the
3    Federal Rules of Civil Procedure, Judge Karas signed
4    plaintiff's attachment.  Plaintiffs thereupon proceeded to
5    attach the defendants' funds and on June 15, 2007 the parties
6    entered into a stipulation to substitute a bond for the
7    attached funds.
8              In August, 2007, defendants requested a
9    post-deprivation hearing pursuant to Rule of Civil Procedure --
10   well, Supplemental Admiralty Rule E(4)(f).  The parties briefed
11   their positions.  And on September 5 of 2007 I held a hearing
12   on the defendants' application to vacate the attachment.  Among
13   other things, the defendants argued, as I noted before, that
14   the attachment should be vacated because the defendants could
15   be found in the district within the meaning of Supplemental
16   Rule B(1)(a).  Specifically, defendants argue that contrary to
17   the assertions set forth in Mr. Lyons' June 5 affirmation, they
18   had, in fact, been registered with the New York State
19   Department of Corporations to conduct business in New York as a
20   foreign limited partnership since June 22, 2005.
21             I'm citing the memorandum of law in support of the
22   defendants' motion to vacate the maritime attachment, 3, 4, and
23   page 10 through 15.
24             Defendants also noted that they had retained a
25   registered agent in New York to accept service of legal
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    11

7979CEND                    Decision
1    process.
2              In response to defendants' claims that they could be
3    found in the district, plaintiff offered a mea culpa -- that's
4    plaintiff's term, not mine -- acknowledging that it had made a
                              Page 5

Sep 7 hearing
5   misstatement to the court in that it failed to disclose that
6   defendant was, in fact, registered to do business in the State
7   of New York and had a registered agent for the service of legal
8   process within the district.
9           And I'm quoting the memorandum of law in opposition to
10  the motion to vacate, that's plaintiff's memorandum of law at
11  6.
12          Insisting that the misstatement was at most a harmless
13  error, plaintiff attributed the misstatement in Mr. Lyons' ex
14  parte affirmation to a "clerical error" occasioned by
15  plaintiff's use of "a pro forma Rule B(1) affirmation in
16  support of the application for an attachment order" that
17  plaintiffs failed to "revise to properly reflect the results of
18  our investigation." That's Mr. Lyons' affirmation in support
19  of the opposition motion at paragraph 10.
20          I find that the facts surrounding plaintiff's
21  misstatements suggest otherwise and are highly troubling. In
22  the first place, it should be noted that it was not until
23  August 16 of 2007, more than two months after the issuance of
24  an ex parte attachment order that totaled more than fifteen
25  million dollars, that plaintiff first notified the court that
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                              12
7979CEND                    Decision
1   its affirmation in support of the attachment was inaccurate.
2           Second, counsel's euphemistic characterization of the
3   misstatement as a clerical error seems wholly inconsistent with
4   the record developed before and during the September 5 oral
5   argument in this matter. For example, in Mr. Lyons'
6   affirmation in opposition to defendants' motion to vacate the
7   attachment, he acknowledged that at the time the initial
8   affirmation was submitted to Judge Karas, "Plaintiff was, in
9   fact, aware that WBC was registered to do business in the State
10  of New York and had a registered agent for the service of
11  process." That's paragraph 10 of the affirmation of Mr. Lyons.
12          At oral argument Mr. Lyons reaffirmed this fact,
13  conceding that at the time he signed the affirmation presented
14  to Judge Karas, he was, in fact, aware that the defendants were
15  registered in New York and had an agent to accept legal process
16  in New York.
17          Indeed, Mr. Lyons went even further, stating that he
18  and his cocounsel had actually researched whether registration
19  to do business in New York and having an agent to accept
20  process was sufficient to be found within the district. And he
21  did this research before he signed the affirmation accompanying
22  the attachment. Counsel stated that it was their conclusion
23  that it was not sufficient to be found in the district.
24          In light of the knowledge and forethought apparently
25  expanded on this issue prior to plaintiff's submission of the
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                              13
7979CEND                    Decision
1   affirmation in this matter, I find it all but inconceivable
2   that counsel could have signed an affirmation under penalty of
3   perjury asserting, as I noted before, that the affiant had
4   attempted to locate the defendants in the district and that as
5   part of the investigation counsel's office had contacted the
6   Division of Corporations of the New York Department of State
7   and found no records indicating that defendants were either
8   incorporated or licensed to do business in the State of New
9   York.
                        Page 6

Sep 7 hearing

10    Indeed, the only two possible explanations that come
11 to mind for me are these: Either counsel signed a crucial ex
12 parte affirmation without reading it in even the most cursory
13 fashion; or worse, counsel deliberately submitted an affidavit
14 which he knew to be false and materially misleading to the
15 court. Although the latter conclusion is far more serious,
16 each is gravely troubling, particularly in the context of an ex
17 parte proceeding involving significant sums of money and
18 implicating important and fundamental due process rights. In
19 any event, under no circumstances to my mind could the
20 misstatement at issue here be blindly dismissed as a clerical
21 error.
22    Equally disturbing to me is the fact that
23 notwithstanding plaintiff's mea culpa, plaintiff nevertheless
24 insists that the misstatement contained in the affirmation was
25 a harmless error and that the June 5 attachment would have

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

7979CEND                    Decision

1 appropriately issued even if plaintiff had not misstated the
2 facts about defendants' presence in the district. Obviously,
3 that is not a determination that plaintiff's counsel is
4 entitled to make. Moreover, plaintiff conceded at oral
5 argument that the information omitted by plaintiff's counsel in
6 the affirmation could have been determinative of whether a
7 judge of this court would have signed the attachment. In light
8 of that concession, not to mention this court's prior ruling
9 today, in which it, in fact, vacated the June 5 attachment
10 order on precisely those grounds, it seems safe to say that
11 counsel's confidence in the harmlessness of the misstatements
12 at issue was highly misplaced. I would also suggest that the
13 facts presented here would arguably justify vacatur of the June
14 5 order as an exercise of the Court's equitable discretion
15 generally recognized by the Second Circuit in Aqua Stoli and
16 other maritime cases, though, as I mentioned before, it was not
17 necessary to reach that finding for purposes of the motion to
18 vacate.
19    Finally, I would note that if fifteen million dollar
20 ex parte maritime attachments have now become so routine, so
21 automatic, and so perfunctory as to render the supporting
22 affirmations mere pro forma documents not worthy of being read
23 before they are signed, or that misstatements of the sort at
24 issue here can be brushed aside as mere clerical errors that
25 are simply harmless in nature, then I must consider this entire

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

15

7979CEND                    Decision

1 area of law may have gotten off the rails, to the detriment of
2 the defendants and the court.
3    Rule B is a powerful and in some ways unprecedented
4 tool available to plaintiffs in maritime actions. There are
5 good reasons for it. But, it is premised on the assurance that
6 plaintiffs and their counsel will act with care and candor in
7 ex parte proceedings with the court. That clearly did not
8 happen here.
9    Be that as it may, I believe that the conduct of
10 counsel in this case requires further action by the court.
11 Regardless of whether plaintiff's counsel was careless or
12 deliberately misled the court, the result was the same. The
13 court issued an ex parte order attaching more than fifteen
14 million dollars of defendants' assets based on the affirmation

Page 7

Sep 7 hearing
15    which plaintiff's counsel now admits was false, at least in
16    part.
17            In light of these facts, plaintiff is hereby ordered
18    to show cause why the court should not impose sanctions,
19    payable to the court, on plaintiff's counsel under Federal Rule
20    of Civil Procedure 11(b) for submitting an affirmation to the
21    court, Judge Karas in this case, that plaintiff's counsel knew
22    or should have known was materially false, at least in part.
23    And I would cite the Federal Rule of Civil Procedure
24    11(c)(1)(B) and also the Second Circuit's ruling in Baffa v.
25    Donaldson, Lufkin & Jenrette Securities Corp., at 222 F.3d 52,
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

16

    7979CEND                Decision
1    at 57, Second Circuit, 2000.
2            Plaintiff's memorandum of law is due no later than
3    September 28, 2007. That's two weeks from today.
4            Defendants' counsel, Mr. Lennon, is invited, but not
5    required, to submit its own memorandum on or before that date.
6            As a concluding comment, let me just say, I derive no
7    satisfaction in issuing an order to show cause in this case,
8    and I don't do it lightly.
9            Mr. Lyons, I don't know you. I met you on Wednesday
10    for the first time. You struck me as a decent man and a very
11    capable lawyer. I was impressed by the quality of the papers
12    you submitted. I was impressed by the quality and
13    sophistication of the legal arguments that you made at the
14    hearing. I want to assure you, I have not made up my mind with
15    regard to the Rule 11 sanctions issue. I'm keeping an open
16    mind and I intend to read your submissions very carefully and
17    with great attention. I have to admit, however, that I find
18    that the affirmation that was submitted in support of the
19    June 5 attachment order to have been, at best, so careless and
20    so negligent as to border on an abdication of your duties as an
21    officer of the court.
22            As I just mentioned, that is arguably the best gloss
23    one can put on it. But under these circumstances, I feel I
24    have no choice but to issue this order to show cause and
25    consider the Rule 11 sanctions.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

17

    7979CEND                Decision
1            Again, I intend to keep an open mind. I really do
2    hope you'll persuade me that they are not warranted here, but I
3    think on these facts and on this record I have no choice.
4            That's all I have to say. Unless there are other
5    matters we need to cover, we are adjourned.
6            MR. LENNON: Your Honor, I'd just like to add a couple
7    of comments about the second portion of your decision on the
8    order to show cause. And I can only say, based on my
9    relationship with Mr. Lyons over many, many years, that this is
10    completely an out-of-character incident for him. We've had
11    countless, countless cases together. And when it came to light
12    that this affidavit was incorrect, which only came to my
13    attention on the 10th of August, which is the first date that
14    we actually attempted to file the motion, I was surprised. And
15    I can tell from you speaking with Mr. Lyons that he, at that
16    time when he first realized the mistake himself.
17            I'm not offering that as an excuse. I take fully and
18    seriously the comments you made about the impact of that
19    affidavit in terms of a lawyer's obligations.
                            Page 8

Sep 7 hearing
```
20          But I do want to add those comments to the court in
21   terms of your consideration of the order to show cause because
22   this is not, to my knowledge and my experience with Mr. Lyons,
23   in keeping with his character and reputation as a lawyer in
24   this bar.
25          THE COURT:  I appreciate that, and I certainly credit
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300

                                                                    18

7979CEND                       Decision
```
1   it.  And as I said, I haven't made up my mind on this.  And
2   this is, obviously, not personal because my own observations of
3   Mr. Lyons were very positive.  But I'm troubled at a state of
4   affairs where an affidavit like that gets presented to a judge
5   on what is not a small matter.  This is not a certificate of
6   service demonstrating that a brief was served on an opposing
7   party or that somebody received an innocuous document.  This is
8   a fifteen million dollar attachment that in effect was in place
9   for three months, in an ex parte proceeding where the judge is
10   relying on the statement of counsel in the affirmation in
11   making a determination of an attachment.  It is a serious,
12   serious matter.  And so, I just think I have an obligation to
13   follow up along the lines I've suggested.
14          MR. LENNON:  I'm not disagreeing with your Honor.  In
15   fact, some of those comments are arguments that we made in our
16   papers as well.  So I appreciate that.
17          I just wanted to share my thoughts about the situation
18   before the order to show cause comes on for decision.
19          THE COURT:  Thank you, Mr. Lennon.  I appreciate that.
20          Mr. Lyons, you'll have an opportunity to think about
21   this and submit something in writing.  But, I do want to hear
22   from you if you want to be heard.
23          MR. LYONS:  No.  I have no comments at this time, your
24   Honor.  I'll save that for the order to show cause.
25          THE COURT:  Thank you.  Anything else we need to cover
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300

                                                                    19

7979CEND                       Decision
```
1   today, gentlemen?
2          MR. LENNON:  Your Honor, I think the only point of
3   clarification I would request with respect to the first part of
4   the court's decision is with regard to return of the bond.
5          One of the things we did request as part of the motion
6   to vacate is that if the court did grant the motion, that the
7   bond be ordered to be returned, which I think is a necessary
8   part of the process.
9          THE COURT:  Yes.  I think that's right.  And I think I
10   alluded to that in suggesting that as a corollary to the
11   vacatur of the attachment order, I would also be vacating the
12   June 15 order of Judge Karas.  But I think I should be more
13   explicit.  So I thank you for that.
14          Yes.  I would order that the bond be returned -- or
15   how do you style it?
16          MR. LENNON:  Just the return of the bond.
17          THE COURT:  Okay.  Mr. Lyons, do you object to that?
18          MR. LYONS:  The only requirement, your Honor, there's
19   a ten-day automatic stay in respect of your decision and
20   vacation of the attachment.  That gives us an opportunity to
21   decide whether we want to appeal.  We have the right to appeal
22   your decision.
23          THE COURT:  Understood.
24          MR. LYONS:  So there's an automatic ten-day stay.  And
```
                                Page 9

Sep 7 hearing
25    then there's an opportunity, and we probably will file a motion
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

20

7979CEND                    Decision
1    to stay the -- your decision pending appeal.
2            So, I would ask that we not have to return the bond
3    until after at least the ten-day automatic stay.
4            THE COURT:  I don't think we've discussed really this,
5    but Mr. Lennon you want to respond to that?
6            MR. LENNON:  I have no problem with that position.
7    I've taken that same position myself.
8            THE COURT:  Understood.  All right.
9            And that should be reflected in the order of the
10   court.
11           Anything else we need to cover today gentlemen?
12           MR. LENNON:  No.  Thank you, your Honor.
13           MR. LYONS:  No.  Thanks, your Honor.
14           THE COURT:  Thank you all very much.
15           You know, I'm talking to Mr. Hernandez, and he
16   suggests maybe I should invite the parties or Mr. Lennon to
17   submit a proposed order for the return of the bond that I can
18   then execute.
19           MR. LENNON:  I will do that, your Honor.  Is it okay
20   if I submit that by fax?
21           THE COURT:  That's fine.  Yes.
22           MR. LENNON:  I'll get the fax number at the end of the
23   hearing.
24           (Adjourned)
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

# Exhibit E

## Unger Affirmation

**NYS Department of State**                                    **Counsel's Office**

# Legal Memorandum CO01
## "DOING BUSINESS" IN NEW YORK:
## AN INTRODUCTION TO QUALIFICATION

### General Guidelines

Certain organizations formed outside New York may not do business in New York until authorized to do so. Called "foreign," whether formed in another state of the United States or in another country, such organizations include for-profit and not-for-profit corporations, limited liability companies, and limited partnerships. *See generally*, Business Corporation Law §§ 1301 - 1320 (for-profit corporations), Limited Liability Company Law §§ 801 - 809 (limited liability companies), Not-for-Profit Corporation Law §§ 1301 - 1321 (not-for-profit corporations), and Partnership Law § 121-901 - 121-908 (limited partnerships). (For simplicity and for reasons of history, much of this discussion will refer to corporations. In context, such a reference should be taken as including other forms.) The requirement to obtain authority to do business exists to protect domestic organizations from unfair competition and to place domestic and foreign organizations on an equal footing. "Fairness and justice require that when a foreign corporation comes into our State to conduct business under similar methods and to the same degree it does in its own state, or as do our domestic corporations, that such a corporation should be subject to New York laws and regulations as a recompense for the advantages enjoyed by it." *William L. Bonnell Co. v. Katz*, 23 Misc.2d 1028, 1031, 196 N.Y.S.2d 763, 768 (Sup. Ct. 1960).

Organizations obtain authority to do business in New York by making a filing, an "application for authority," in the Department of State. The effect of an application for authority is twofold: the organization acknowledges that it considers itself to be doing business in the state, and it facilitates legal and administrative proceedings by specifying in the application for authority where and in what manner the organization may be served with process. The application for authority does not subject the foreign organization to any substantive regulation that does not also apply to a foreign organization doing business without authority.The consequence of doing business without authority is that the organization may not affirmatively use New York courts until it obtains authority and pays all arrears in fees, penalties, and taxes.

The ability of a state to require a foreign corporation to apply for authority (or "to take out a license" or "to qualify") traces to *Paul v. Virginia*, 75 U.S. (8 Wall.) 168 (1868). It holds that only natural persons are "citizens" within the meaning of the Privileges and Immunities Clause. U.S. Constitution art. IV, § 2. From this it follows that a state has the power to exclude a foreign corporation from doing intrastate business within its borders. However, no state may exclude or condition admission of a foreign corporation that engages solely in interstate or foreign commerce. The Commerce Clause, U.S. Constitution art. I, § 8, cl. 3, commits to Congress, and impliedly withholds from states, the power to regulate interstate and foreign commerce. Holding that a corporation engaged in interstate commerce need not comply with a foreign corporation statute, the U.S. Supreme Court said, "A corporation of one state may go into another, without obtaining the leave or license of the latter, for all the legitimate purposes of [interstate] commerce; and any statute of the latter state which obstructs or lays a burden on the exercise of this privilege is void under the commerce clause." *Dahnke-Warner Milling Co. v. Bondurant*, 257 U.S. 282, 290 (1921). *See also, International Textbook Company v. Tone*, 220 N.Y. 313, 115 N.E. 914 (1917) ("We have steadily upheld the right of foreign corporations, without aid of any license, to engage in activities incidental to commerce between the states." 220 N.Y. at 318.).

Whether an organization is "doing business" sufficient to require it to qualify is often the source of

confusion. In part this is because we tend no longer to think about organizations, especially corporations, in the same way as do the historical cases. Another source of confusion is the fact that Business Corporation Law § 1301(b) and its analogs do not define doing business; they contain only a nonexclusive list of what does not constitute doing business. (See the discussion below.) Yet more confusion stems from use of the same term, "doing business," in two other separate, but related, contexts: whether a corporation's activities in a state are sufficient to subject it to personal jurisdiction and whether a corporation's presence within a state requires it to pay taxes. Before any further discussion of qualification, some discussion of these other uses of the term is worthwhile.

The power of New York courts to subject a foreign corporation to personal jurisdiction because it is "doing business" in the state derives from case law. Courts continue to exercise the power by virtue of Civil Practice Law and Rules § 301. In this sense of the term, "a foreign corporation is amenable to suit in New York courts if it is 'engaged in a continuous and systematic course of "doing business" here as to warrant a finding of its "presence" in this jurisdiction'." *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 227 N.E.2d 851, 281 N.Y.S.2d 21 (1967) quoting *Simonson v. International Bank*, 14 N.Y.2d 281, 285, 200 N.E.2d 427, 429, 251 N.Y.S.2d 433, 436 (1964). *See also, Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 77 N.Y.2d 28, 565 N.E.2d 488, 563 N.Y.S.2d 21 (1990). This test of "doing business" is a simple and pragmatic one, which varies in its application depending on the particular facts of each case. *Bryant v. Finnish National Airline*, 15 N.Y.2d 426, 432, 208 N.E.2d 439, 441-2, 260 N.Y.S.2d 625, 629 (1965). *See*, D. Siegel, *New York Practice*, §§ 82, 83. A court must be able to say from the facts that the corporation is present "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917).

The traditional test of doing business for purposes of CPLR § 301 is more demanding than that for longarm jurisdiction under CPLR § 302(a)(1). CPLR § 302 discards the traditional concept of doing business for a broader standard, that of transacting any business. It also abandons the requirement of the defendant's "presence." However, even CPLR §302 fails to exhaust the full jurisdictional potential permissible under the due process clause of the federal constitution. *See Simonson v. International Bank, supra, and Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8 (1965). The classic statement of that principle is that for a state to assert jurisdiction the defendant must have "certain minimum contacts . . . such that the maintenance of suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316; 66 S.Ct. 154, 158, 90 L. Ed. 95 (1945). A party subjects itself to jurisdiction consistent with traditional notions of fair play and substantial justice when it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denkcla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Conducting activities without the state that are purposefully directed at the forum state also satisfies the constitutional standard. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being brought into court there. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 1000 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Constitutional limitations on the authority of a state to collect taxes from a foreign business engaged in interstate commerce derive from two sources. The first is the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, pertaining the jurisdiction to tax. *Wisconsin v. Penney Co.*, 311 U.S. 435, 445, 61 S.Ct. 246, 250, 85 L.Ed. 267 (1940). For a state to validly tax an interstate commercial activity, it must have "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344-5, 74 S.Ct. 535, 538, 98 L.Ed.2d 744 (1953).

The second source is the Commerce Clause. *Complete Auto Transit v. Brady*, 430 U.S. 274, 287-9, 97 S.Ct. 1076, 1083-84, 51 L.Ed.2d 326 (1977) outlines the Commerce Clause approach to taxation issues. It sets out a four-pronged standard for determining the validity of a state tax on interstate commercial activity: (1) The taxed activity must have a substantial nexus with the taxing jurisdiction; (2) the tax must be fairly apportioned; (3) the tax must not discriminate against interstate commerce; and (4) the tax must be fairly related to the services provided by the state. 430 U.S. at 279, 97 S.Ct. at 1079. This analysis, with some modification, is still followed. *See, National Geographic v. California Equalization Board*, 430 U.S. 551, 97 S.Ct. 1386, 51 L. Ed.2d 631(1977), *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 99 S.Ct. 1813, 60 L.Ed. 336 (1979), *Quill Corp. v. North Dakota*, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), and *Oklahoma Tax Commission v. Jefferson Lines*, 514 U.S. 175, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995). *See also, Homier Distributing Co., Inc. v. City of Albany*, 90 N.Y.2d 153, ___ N.E. 2d ___, 656 N.Y.S. 2d 223 (1997), *Matter of Orvis Co. v. Tax Appeals Tribunal*, 86 N.Y.2d 165, 654 N.E.2d 954, 630 N.Y.S.2d 690 (1995), *cert. den.* 64 U.S.L.W. 2012, 116 S.Ct. 518, and *Ontario Trucking Association v. Department of Taxation and Finance*, 168 Misc. 2d 648, 640 N.Y.S. 2d 377 (1996).

Debating whether the jurisdictional doing business test and the taxation doing business test are the same is not necessary nor fruitful here. What is important is that it takes a higher level of contact to invoke the qualification requirement. *Invacare Corp. v. John Nageldinger & Son, Inc.*, 576 F. Supp. 1542 (E.D.N.Y. 1984), *Storwal International, Inc. v. Thom Rock Realty Co., L.P.*, 784 F. Supp. 1141 (S.D.N.Y. 1992). It follows that if an organization is not doing business that subjects it to jurisdiction or taxation, it is not doing business that requires qualification. Conversely, by qualifying an organization concedes that it is subject to jurisdiction and taxation. Above the jurisdiction and taxation minimum contacts, however, not all business activity engaged in by a foreign organization rises to "doing business" in the qualification sense *Von Arx, A.G. v. Breitenstein*, 52 A.D.2d 1049, 384 N.Y.S.2d 895 (4th Dept. 1976), *aff'd* 41 N.Y.2d 958, 363 N.E.2d 582, 394 N.Y.S.2d 876 (1977).

Lending support to the assertion that more is necessary for qualification purposes are the cases that articulate the test as one of corporate continuity of conduct here. *Penn Collieries Co. v. McKeever*, 183 N.Y. 98, 75 N.E. 955 (1905) (To be "doing business in this State" implies corporate continuity of conduct in that respect. 183 N.Y. at 103), *International Fuel & Iron Corp. v. Donner Steel Co.*, 242 N.Y. 224, 151 N.E. 214 (1926) ("[T]he foreign corporation must do more than make a single contract, engage in an isolated piece of business, or an occasional undertaking; it must maintain and carry on business with some continuity of act and purpose." 242 N.Y. at 230). For the qualification requirement to apply, the local or intrastate contacts with New York must be permanent, continuous, and regular. *Netherlands Shipmortgage Corp. v. Madia*, 717 F.2d 731, 1984 A.M.C. 141, 72 A.L.R. Fed. 562 (2d Cir. 1983) ("New York courts have repeatedly and recently affirmed the vitality of this standard which requires the intrastate activity of a foreign corporation to be permanent, continuous, and regular for it to be doing business in New York. [Citations omitted.]"). *See also, Allenberg Cotton Co. v. Pittman*, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974); *cf. Eli Lilly & Co. v. Sav-On Drugs, Inc.*, 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961). Put another way, "[t]he 'more' that is required for section 1312 of the Business Corporation Law lies not in the quantum but rather in the nature of the business in New York." *Paper Manufacturers Co. v. Ris Paper Co.*, Inc., 86 Misc.2d 95, 98, 381 N.Y.S.2d 959, 963 (Civ. Ct. 1976).

Statute offers little guidance on the nature of the business required for qualification. For example, Business Corporation Law § 103(b) provides, "This chapter applies to commerce with foreign nations and among the several states, and to corporations formed by or under any act of congress, only to the extent permitted under the constitution and laws of the United States." However, as the preceding discussion shows, that is a truism. Beyond that, Business Corporation Law § 1301(b) and its analogs offer only nonexclusive lists of activities that do not constitute doing business. As a class these are

Case 1:08-cv-04711-BSJ   Document 10   Filed 06/06/2008   Page 4 of 4

activities that have to do with maintaining the organization's status as an entity. Examples include holding meetings of owners or managers, maintaining bank accounts, and defending actions and proceedings.

Most of the law of "doing business" is found in the decisions of courts. Those cases afford no precise measure of the extent of the activities which may be determinative of whether a foreign organization is doing business in New York for purposes of qualification. Each case must be decided on its own facts. *William L. Bonnell Co. v. Katz*, 23 Misc.2d 1028, 196 N.Y.S.2d 763 (Sup. Ct. 1960). Besides the requirements that activities exhibit local or intrastate character and be permanent, continuous, and regular, a third general factor emerges from those decisions-- the relationship of the activity to the ordinary and regular business of the organization. If the activity is vital and essential to the organization's business, it will have to qualify. If the activity is merely incidental to that business, it will not. *Cummer Lumber Co. v. Associated Manufacturers Mutual Fire Insurance Corp.*, 67 App.Div. 156, 156, 73 N.Y.S. 668, 671 (2d Dept. 1901), *aff'd mem.* 173 N.Y. 633, 66 N.E. 1106 (1903), *Penn Collieries Co. v. McKeever, supra.* The court in *Invacare Corp. v. John Nageldinger & Sons, Inc.*, 576 F. Supp. 1542 (E.D.N.Y. 1984), regarded *Parkwood Furniture Co. v. OK Furniture Co.*, 76 A.D.2d 905, 429 N.Y.S.2d 240 (2d Dept. 1980) and *Colonial Mortgage Co. v. First Federal Savings and Loan Association*, 57 A.D.2d 1046, 395 N.Y.S.2d 798 (4th Dept. 1977) as examples by which to judge other fact patterns.

This article discussed the general guidelines that inform the cases on doing business in New York for purposes of qualification. For further reading see Note, *Foreign Corporations: What Constitutes Doing Business Under New York's Qualification Statute?*, 44 Fordham Law Review 1042 (1976) and Annotation, *What Constitutes Doing Business Within State for Purposes of State "Closed-Door" Statute Barring Unqualified or Unregistered Foreign Corporation from Local Courts - Modern Cases*, 88 A.L.R. 4th 466 (1991).

February 2000

---

[ Home ] [ Counsel's Office Menu Page ] [ Legal Memoranda - Corporations ]