279-08/MEU

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
CAROLINA SHIPPING LTD.,

                Plaintiff,              08 CIV 4711 (BSJ)

- against -

RENAISSANCE INSURANCE GROUP LTD.,

                Defendant.
------------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO VACATE ATTACHMENT

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
RENAISSANCE INSURANCE GROUP LTD.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

Of Counsel:
Michael E. Unger (MU 0045)

NYDOCS1/306203.1

## PRELIMINARY STATEMENT

Defendant RENAISSANCE INSURANCE GROUP LTD. (hereinafter "RENAISSANCE"), by and through undersigned counsel Freehill, Hogan & Mahar, LLP, respectfully submits this Reply Memorandum of Law, together with the Declaration of Elena Podberezskaya and Affirmation of Michael E. Unger, in further Support of Defendant's Motion to Vacate the Attachment and for dismissal of the Verified Complaint.

The attachment should be vacated because Plaintiff CAROLINA SHIPPING LTD. (hereinafter "CSL") has failed to satisfy its burden of showing that the attachment satisfies the technical requirements of Admiralty Rule B.  At the time CSL commenced this action, RENAISSANCE was "found" in the Southern District of New York within the meaning Rule B(1) because it was subject to the general personal jurisdiction of the courts of New York and had a designated agent to accept service of process within the District.  It is undisputed that RENAISSANCE was "found" for service of process.  Thus, the only issue before the Court is whether RENAISSANCE was "found" in the jurisdictional sense.  As shown in RENAISSANCE's motion papers, the answer to this question is clearly in the affirmative. Accordingly, Defendant respectfully submits that the Court should enter an Order vacating the Rule B attachment and directing the release of any funds which have been restrained.

## FACTS

To address certain inaccuracies as to the version of facts contained in Plaintiff CSL's opposition papers, a brief recapitulation of the facts is necessary.  In this regard, RENAISSANCE respectfully refers the Court to the Podberezskaya Declaration and the Unger Affirmation submitted herewith.

**ARGUMENT**

**Point I**

**TO BE "FOUND" IN TERMS OF JURISDICTION, RENAISSANCE NEED *NOT* BE ENGAGED IN "ACTUAL" OR "SUBSTANTIAL" BUSINESS ACTIVITIES IN THE DISTRICT**

What is means to be "found" within the District for purposes of Rule B has been left undefined by Congress. As such, courts have generally turned to the definition set forth by the Second Circuit in Seawind Compania S.A. v. Crescent Line, Inc., 320 F.2d 580, 583 (2d Cir. 1963). According to the Seawind Court, a Rule B defendant is "found" in terms of jurisdiction when it is "engaged in sufficient activity in the district to subject it to jurisdiction even in the absence of a resident agent expressly authorized to accept process." Id.

To be clear, the test set forth by the Second Circuit does not require that a defendant be engaged in "actual" or even "substantial" activity in the District for it to be "found" in terms of jurisdiction as CSL inaccurately claims. The Seawind Court *itself* highlighted this point by holding that the defendant was found, *not* because it was engaged in continuous and systematic activities in the District to qualify as "doing business" under the ordinary tests, but because the defendant was *amenable* to suit under the New York long-arm jurisdictional statute at the time the attachment was sought. Similarly, in Integrated Container, Inc. v. Starlines Container Shipping, Ltd., 476 F.Supp. 119, 123 (S.D.N.Y. 1979), Judge Leval, sitting on the district court, reasoned that the defendant's lack of contacts with the District sufficient to satisfy the "doing business" test did not prevent the conclusion that the defendant was, in fact, found in terms of jurisdiction based on the defendant's *amenability* to suit. Likewise, in Bay Casino, LLC v. M/V ROYAL EMPRESS, 20 F.Supp.2d 440, 451-52 (S.D.N.Y. 1998), Judge Johnson found that substantial commercial activity was but *one of the many ways* a defendant could be "found"

within the District, including, e.g., the signing of a New York forum selection clause in a contract.[1] Most recently, Judge Lynch in Express Sea Transport Corp. v. Novel Commodities S.A., 06-cv-3404 (May 4, 2006) (a copy of which is attached to the Unger Affirmation dated June 2, 2008, as Exhibit C), Judge Sullivan in Centauri Shipping Ltd. v. Western Bulk Carriers KS, 07-cv-4761 (Sept. 7, 2007) (a copy of which is attached to the Unger Affirmation dated June 2, 2008, as Exhibit D)[2], and Judge Castel in Sealand Investment Corp v. Ingosstrakh Insurance Co., 08-cv-4874 (May 27, 2008) (a copy of which is attached to the Unger Affirmation dated June 9, 2008, as Exhibit A), have *each* held that the defendants in those cases were "found" in terms of jurisdiction because they were *amenable* to suit in New York through their registration to do business in New York with the Department of State, Division of Corporations.

Throughout its opposition, Plaintiff CSL misinterprets Seawind as requiring something more than amenability to suit when the circumstances do not give rise to specific jurisdiction. Judges Lynch and Sullivan have interpreted Seawind as requiring quite the opposite. In Express Sea Transport and Centauri, both Judges viewed the key inquiry under Seawind as being whether the defendant was *amenable* to suit within the District, regardless of whether general or specific jurisdiction applied. Judge Sullivan went on to state that while the existence of continuous and

---

[1] In this regard, Judge Lynch stated in Express Sea Transport Corp. v. Novel Commodities S.A., 06-cv-3404 (May 4, 2006): "If signing a forum selection clause is sufficient to render a defendant present within the jurisdiction, it must follow that the key issue is whether the defendant is amenable to suit for whatever reason and not the extent of his physical or commercial presence within the district."

[2] In its opposition papers, Plaintiff CSL argues that Centauri is distinguishable because the plaintiff in that case failed to inform Judge Sullivan of the defendant's registration to do business in New York, and "thus, much of the thinking was spent considering whether to impose sanctions for the plaintiff's purported 'clerical error.'" (Plaintiff's Opposition Brief at p. 8). Concededly, the issue of sanctions was raised in that case due to the plaintiff's failure to exercise due diligence in concluding that the defendant was not "found", but the issue of whether registration to do business in New York makes a defendant "found" was clearly the Court's main holding in its Oral Vacature Decision which was rigorously reaffirmed by the Court in its reported Decision, located at 528 F.Supp.2d 186, 190-193 (S.D.N.Y. 2007).

systematic contacts is one way of tacitly demonstrating amenability, it is by no means the only way. Seawind, according to Judge Sullivan, suggests that a demonstration of the defendant's contacts with the forum under the "doing business" test is "most relevant perhaps as a default in the absence of more explicit manifestations of jurisdictional acquiescence." It is difficult to conceive of a more explicit manifestation of acquiescence to the jurisdiction of the New York courts than the registration to do business which expressly invokes the general jurisdiction of the courts over the registered corporation.

The only case in this District which suggests otherwise is Magistrate Judge Gorenstein's decision in Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmBH & Co., 409 F.Supp.2d 427 (S.D.N.Y. 2006). That case, however, has since been overruled by the Second Circuit, rejected by Judges Lynch, Sullivan and Castel, and is no longer good law. In Erne, Magistrate Judge Gorenstein expressly recognized that the defendant's registration to do business in New York amounted to a consent to general personal jurisdiction in New York for any cause of action whether arising in the State or elsewhere, thus satisfying the jurisdictional prong of the Seawind "found" test. However, the Erne Court's analysis did not end there. Rather, Magistrate Judge Gorenstein continued his analysis so as to "interpret the found in the district requirement" under what the Second Circuit has referred to as the "needs test". In other words, the Erne Court focused on whether registering to do business in New York would serve the dual purposes of Rule B to: (1) provide security in favor of the plaintiff; and (2) assure the defendant's appearance. Answering in the negative, the Erne Court reasoned that requiring an "actual presence" would make it far more likely that assets might be located in the District[3] and that

---

[3] Because a Rule B attachment presupposes the presence of RENAISSANCE's property within the District, Plaintiff's counsel swore to this presupposition in its application for the attachment.

NYDOCS1/306173.1                                        4

further appearances by the defendant could be avoided by its unilateral revocation of registration at any time[4]. Based on the conclusion that neither policy underlying Rule B would be vindicated, Magistrate Judge Gorenstein held that anything short of "actual presence" was insufficient to make the defendant "found" in the jurisdictional sense.

The sole predicate to Erne's holding – the application of the "needs test" – has since been overruled by the Second Circuit in Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 343, (2d Cir. 2006) (specifically citing and rejecting Erne's application of the "needs test" because it required an improper fact-intensive inquiry into whether, even if the defendant was not found, the attachment was necessary to obtain jurisdiction or secure a potential judgment). Erne has also been harshly rejected by Judges Lynch and Sullivan as a decision *"inapposite"* to Rule B, *"inconsistent"* with the Second Circuit opinion in Seawind and which *"flies in the face of common sense"*.

Less than two weeks ago, Judge Castel in Sealand joined Judges Lynch and Sullivan in rejecting Erne when he denied the plaintiff's attachment application *on its face*, holding that, because the defendant was registered to do business in New York, it was "found" within the District. (Unger Affirmation, Exhibit A) (*citing* Centauri and The Rockefeller University v. Ligand Pharmaceuticals Inc., 2008 U.S. Dist. LEXIS 40528 (S.D.N.Y. May 19, 2008) (holding defendant's unrevoked authorization to do business amounted to consent to personal jurisdiction in New York)). Significantly, the Sealand attachment application denied by Judge Castel sought

---

(Declaration of Lauren C. Davis, Exhibit 1 at ¶ 7) (swearing upon the information and belief that the Defendant has or will soon have property within the District).

[4] The question of whether a defendant is "found" is determined as of the time the Verified Complaint is filed. Thus, "once a registered corporate defendant is sued and served within the district, it is too late for the defendant to revoke its registration. The defendant is subject to the jurisdiction of the court and any proceedings necessary to secure the defendant's presence can be taken by the court pursuant to the Federal Rules." Express Sea Transport at 11.

NYDOCS1/306173.1                                    5

to attach property of a Russian insurance company which had registered to do business in New York, but had not yet established a representative office or obtained a license to underwrite insurance in New York.

Plaintiff CSL obtained, and now defends, the attachment in this case based on one highly disfavored magistrate judge's decision.[5] After being criticized, rejected and overruled, Erne is no longer good law. Accordingly, Defendant respectfully submits that the Court should reject Erne and follow Seawind, along with its better-reasoned progeny, and vacate the attachment in favor of RENAISSANCE.

## Point II

### PERSONAL JURISDICTION BASED ON "CONSENT" ALONE SATISFIES FEDERAL DUE PROCESS

Consent is one of the traditional bases for personal jurisdiction. 16 MOORE'S FEDERAL PRACTICE, §108.22 (Matthew Bender 3d ed.). The traditional bases of jurisdiction (consent, physical presence and domicile) prevailed long before the United States Supreme Court *expanded* upon the traditional jurisdictional predicates to include the "minimum contacts" test as another method of gaining jurisdiction over foreign defendants. The minimum contacts test was formulated to meet the commercial realities of the growing interstate and international dealings between states and foreign corporations. To allow for the exercise of jurisdiction over the increasing number of nonconsenting foreign corporations engaged in cross-border transactions, the minimum contacts test was created to justify an exercise of jurisdiction upon a more tacit Due Process showing.

---

[5] In its opposition brief, Plaintiff CSL purports that there are only three cases which address the issue of whether registration to do business in New York satisfies the Rule B presence test: Express Sea Transport, Centauri and Erne. (Plaintiff's Brief at p. 6). Not included in this list was Judge Castel's recent ruling in Sealand.

NYDOCS1/306173.1                              6

That having been said, when the exercise of personal jurisdiction is predicated upon one of the traditional jurisdictional predicates, i.e., consent, Due Process is satisfied "without regard to the quality of the defendant's contacts with the forum state or the relationship between the cause of action and the defendant's presence in the state." 1 WEINSTEIN, KORN & MILLER, CPLR MANUAL §3.03 (Matthew Bender Chase Ed. 2000); see 16 MOORE'S FEDERAL PRACTICE, §§ 108.31 and 108.53 n.1. See Burnham v. Superior Court of California, 495 U.S. 604 (1990) (discussing the modern view of jurisdiction through physical presence, one of the traditional bases of jurisdiction).

Under New York State law, any person or entity may consent to being sued in New York, even if not otherwise subject to the state's *in personam* jurisdiction.[6] It is undisputed that among the methods of manifesting consent to suit in New York is a foreign corporation's registration with the Department of State for authorization to do business in New York. It is also undisputed that RENAISSANCE was a registered foreign corporation within the State of New York at the time the Verified Complaint was filed. Therefore, RENAISSANCE "has **consented** to general jurisdiction in the courts of the state, and consequently, in this Court." Centauri, 528 F.Supp.2d at 192 (emphasis added). Furthermore, RENAISSANCE reiterates, on the record (*see* Podberezskaya Declaration at ¶ 9), that it specifically consents to the personal jurisdiction of this Court for purposes of any and all proceedings relating to this action. RENAISSANCE therefore concedes that it would be subject to any judgment entered against it by this Court.[7] Accordingly,

---

[6] The traditional bases of jurisdiction existing prior to the promulgation of the New York Civil Practice Laws & Rules were incorporated into it by CPLR 301.

[7] The only scenario under which this Court would conceivably be asked to enter judgment against either party is if one or the other fails to abide by the decision of the Russian arbitrators. RENAISSANCE has expressly agreed to do so. (*See* Podberezskaya Declaration at ¶ 5).

based on RENAISSANCE's unequivocal consent in terms of personal jurisdiction, a further inquiry into its contacts with New York is not required by Due Process.[8]

### Point III

### RENAISSANCE IS PROPERLY REGISTERED WITH THE DEPARTMENT OF STATE, DIVISION OF CORPORATIONS TO DO BUSINESS IN NEW YORK

Plaintiff CSL argues that RENAISSANCE's registration with the Department of State, Division of Corporations is improper because RENAISSANCE has not obtained a license to underwrite insurance in New York from the New York State Department of Insurance as a matter of New York State Insurance law. CSL's argument is nonsensical. RENAISSANCE registered to do business in New York as a first step with a view towards expanding its marine insurance business by eventually establishing a New York representative office to market its insurance products, act as a public relations liaison and assess over a period of time the possibility of becoming a licensed marine insurance underwriter in New York should market conditions warrant. (Podberezskaya Declaration at ¶¶ 11-12). RENAISSANCE was and is well aware that if it does market, solicit or procure insurance, or apply to become a licensed underwriter in New York, it will necessarily have to comply with all applicable New York State insurance and business laws and regulations. (Id. at ¶ 13). At present, RENAISSANCE has not marketed, solicited, procured or underwritten any insurance products in New York and as such, RENAISSANCE's rights are not governed by (nor has it violated) any New York State Insurance laws, contrary to Plaintiff CSL's contentions.

---

[8] As such, Plaintiff CSL's contentions that a defendant who consents to the general jurisdiction of a forum "will not be subjected to binding judgments within its jurisdiction under the Due Process Clause", (Plaintiff's Opposition Brief at pp. 7 and 10), are simply incorrect.

As a matter of New York State law, RENAISSANCE is a registered foreign corporation with the Department of State, Division of Corporations authorized to do business in New York. *See* Express Sea Transport, at 14 (rejecting the argument that the defendant was improperly registered, Judge Lynch stated: "They are here, they got the agent, they are registered, they concede they are subject to jurisdiction, they are subject to jurisdiction"). CSL's hypothetical argument does not change this fact.[9]

## CONCLUSION

Where RENAISSANCE was amenable to suit in New York by virtue of having registered to do business in the State and had appointed an agent to receive service of process on its behalf within the District, RENAISSANCE was "found" within the District as interpreted by the Second Circuit and the non-reversed district court cases to have considered the issue of the effect of registration. Accordingly, the attachment should be vacated and all funds which have been restrained should be ordered to be released.

Dated: New York, New York
June 9, 2008

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
RENAISSANCE INSURANCE GROUP LTD.

By: _____
Michael E. Unger (MU 0045)
80 Pine Street
New York, New York 10005
(212) 425-1900
(212) 425-1901 (fax)

---

[9] The final point raised in Plaintiff's Opposition Brief is easily disposed of in that it is common ground that a post-attachment application action by a defendant whether it be entering a general appearance, appointing an agent for service of process, or registering to do business is of no moment as the Court must look to the facts as they exist on the date the application is made. Thus, the cases cited at pp. 14-18 of CSL's Brief are inapposite.